United States Court of Appeals,

Fifth Circuit.

No. 92-7038.

UNITED STATES of America, Plaintiff-Appellee,

v.

U.T. ALEXANDER, et al., Defendants.

MALONE TRUCKING COMPANY, Defendant-Cross Claimant-Appellant,

and

Eugene B. Wilshire, Jr., Appellant,

v.

JOC OIL EXPLORATION CO., INC., formerly known as Velsicol Chemical Corp., Southern Pacific Transportation Co., Chromalloy American Corp., Borden, Inc., Texas City Terminal Railway, Cross Defendants-Appellees.

Jan. 21, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before DAVIS and JONES, Circuit Judges and PARKER[1], District Judge.

W. EUGENE DAVIS, Circuit Judge:

Appellant challenges the district court's Rule 11 sanctions order. 771 F.Supp. 830. We conclude that the district court abused its discretion in imposing sanctions and vacate its order.

I.

In 1986, the government filed suit against appellant Malone Trucking Company (Malone) and over two dozen other defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C.A. 9601, et seq. (West 1983 & West Supp.1992). The government sued Malone as one of the "responsible parties" for the cleanup of a hazardous waste site. The government alleged that Malone transported hazardous materials to the site on behalf of others who owned the materials. In 1987, the government entered into a settlement with some of the defendants relieving them of liability for onsite cleanup and costs. Malone was not among the settling

[1]Chief Judge of the Eastern District of Texas, sitting by designation.

defendants.

The defendants who settled with the government (settling defendants) were divided into two groups: the non-premium settling defendants and the premium or de minimus settling defendants. The government released the premium or de minimus settling defendants for any liability relating to cleanup and release of hazardous substances at the waste site. The settlement agreement, by its express terms, did not apply to claims for cleanup of substances beyond the Matco site, such as offsite contamination or groundwater contamination. The government's release of the premium or de minimus defendants was to be void if reliable future evidence showed that any such defendant generated more than one percent of the total residual material at the waste site. The settlement documents and decree further provided that the non-premium settling defendants assumed any liability of the premium settling defendants including liability for offsite and subsurface and groundwater contamination.

The case proceeded against Malone and others as remaining defendants. Judge Kent issued a docket control order requiring that all cross- and counter-claims be filed by May 1, 1991. On that day, Malone filed a cross-claim for contribution and indemnity against the defendants, including defendants who had settled with the government four years earlier. On July 24, the district court issued an order stating that it intended to dismiss the cross-claim and that it believed the filing violated Rule 11. The court gave Malone six days to respond and ordered that the response not exceed five pages in length. Malone filed a timely response.

On August 8, the district court issued a twenty-five page sanctions order, finding that Malone's cross-claim was meritless and filed in bad faith with respect to the premium settling defendants. The court found that the cross-claim was either "an obvious attempt to forestall" the end of litigation that had lasted five years or an effort to "coerce Malone's dismissal by creating mass confusion only weeks before trial." Additionally, it found that "service, when ultimately effected on many of the other defendants, was sloppy, improperly handled, and in many instances deficient." It concluded that the cross-claim was "calculated to do nothing more than delay an already long, drawn-out litigation process." In the course of its opinion, the district court conceded that Malone's

right to contribution under state law presented an issue of first impression in this circuit, and the court disavowed an opinion of a New York district court that arguably supported Malone's position.

The district court imposed sanctions of $10,000 against Malone and $10,000 against Malone's lawyer. It also required Malone and its counsel to pay all the premium settling defendants' costs and attorney's fees related to their response to the cross-claim. The court instructed the parties to submit affidavits establishing their costs, and ordered Malone to pay by September 20 or "face contempt citation and additional sanctions." The court ordered Malone not to file any pleadings on any issue related to the sanctions order. Malone complied, paying out almost $14,000 in fees and costs to the other parties, plus $20,000 in sanctions. Malone timely lodged this appeal from the sanctions order.

II.

Rule 11 provides that a pleading must be "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. In *Thomas v. Capital Sec. Servs., Inc.,* 836 F.2d 866, 873 (5th Cir.1988), we concluded that we should defer to the trial court's factual findings underlying its ruling on sanctions. We also determined that we should review the district court's decision to impose sanctions under an abuse of discretion standard. Id. at 872-73. The United States Supreme Court later adopted this view. See *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460-61, 110 L.Ed.2d 359 (1990).

In Thomas we also examined what Rule 11 requires of attorneys who sign pleadings. Rule 11 demands that the actions of the attorney be objectively, not just subjectively, reasonable under the circumstances. An attorney's subjective good faith is not enough. *Thomas,* 836 F.2d at 873.

In this case, Malone contends that its contribution rights were not extinguished against the premium settling defendants because the government had not fully released those defendants from all liability. We agree that the government's release of these defendants was not comprehensive. The settlement agreement, by its express terms, was limited to onsite remediation costs. Offsite costs were not expressly covered by the settlement agreement. Although the non-premium settling defendants agreed to assume the liability of the premium settling defendants for offsite migration, this assumption did not include a covenant not to sue. The release therefore did not prevent the

government from suing the premium settling defendants for cleanup of waste that migrated offsite. Because the government is not precluded from suing the premium settling defendants for offsite cleanup, Malone has a plausible argument that those premium settling defendants are not shielded from Malone's contribution claim. The district court did not address how the agreement by the non-premium settling defendants to indemnify the premium settling defendants would affect Malone's contribution claim. It may be that the non-premium settling defendants will assume the defenses of the premium settling defendants or that Malone will dismiss its contribution claim against the premium settling defendants after the non-premium settling defendants acknowledge their indemnity obligation. But, we are not persuaded that Malone's contribution action directly against the premium settling defendants is legally insupportable.

The district court seemed to believe that the settlement agreement shielded the premium settling defendants from all claims for contribution because of 42 U.S.C.A. §§ 9613(f)(2) and 9622(g)(5) (West Supp.1992). These sections were adopted when Congress enacted the SARA amendments in 1986. Sections 9613(f)(2) and 9622(g)(5) shield settling defendants from a subsequent suit "for contribution *regarding matters addressed in the settlement.*" (emphasis added). Thus, neither section, on its face, protects settling defendants from claims for contribution for matters *not* addressed in the settlements. The district court did not address this plausible argument, which was justified from the face of the statute and the text of the settlement agreement. Thus, it cannot be said that the claim had no basis in law. In reversing a portion of a sanctions order in another case, we concluded that the absence of authority in this circuit combined with the complexity of the issue was enough to bar Rule 11 sanctions. *Vatican Shrimp Co. v. Solis,* 820 F.2d 674, 681 (5th Cir.), cert. denied, 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987).

Malone also argued that SARA's provisions did not bar claims for contribution arising under state law. To support this view, it cited *United States v. Hooker Chems. & Plastics Corp.,* 739 F.Supp. 125, 129 (W.D.N.Y.1990), which held that a party liable for damages under CERCLA was not barred from pursuing contribution for those damages under state law. The district court concluded that "[t]his appears to be a case of first impression in the Fifth Circuit" and that Hooker

plausibly supported Malone's view. *United States v. Alexander,* 771 F.Supp. 830, 841 (S.D.Tex.1991). The district court then rejected Hooker as incorrect and concluded that it was bound to interpret CERCLA "in the spirit of and within the anticipated mandates provided by the Fifth Circuit." Id. The district court cited no Fifth Circuit authority supporting its view that SARA bars state law claims for contribution.

Parties who argue points of first impression in a circuit are not ordinarily the recipients of a Rule 11 sanctions order. *Coghlan v. Starkey,* 852 F.2d 806, 811 n. 8 (5th Cir.1988) (per curiam); *Brubaker v. Richmond,* 943 F.2d 1363, 1378 (4th Cir.1991); *Securities Indus. Ass'n v. Clarke,* 898 F.2d 318, 321-22 (2nd Cir.1990). Of course, a claim that is utterly insupportable may be sanctionable even if the circuit has not addressed the issue. However, Malone's contribution claim had reasonable support under the plain words of SARA and the settlement agreement. Its claim for contribution under state law had the direct support of one district court opinion. Thus, Malone's legal view, even if not correct, was at least plausible.

The district court also found that the claim was filed for impermissible reasons, i.e., to delay the proceedings or to avoid liability. It is true that mere legal and factual support will not rescue a pleading filed for an impermissible reason. *Sheets v. Yamaha Motors Corp.,* U.S.A., 891 F.2d 533, 538 (5th Cir.1990). Still, where the filing enjoys reasonable factual and legal support, it is not sanctionable absent "unusual circumstances." Id. The district court here did not cite any "unusual circumstances" that warranted sanctions. The court merely asserted the view that the claim was filed for an improper purpose. Even though detailed findings are not required to uphold an award of sanctions, there must be some record to review. Here, there was none.

The district court cites one final reason for its order. It asserts that Malone's service of the claim on the other defendants was "sloppy." We are aware of no authority supporting the view that "sloppy" service may render an otherwise legally and factually justifiable filing sanctionable under Rule 11. Rule 11 does not impose continuing obligations on attorneys. As we observed in *Thomas,* the focus of Rule 11 is on the document signed by the attorney and on the objectively reasonable nature of the filing at the time of the filing. *Thomas,* 836 F.2d at 875. Sloppy service should not be

the basis for sanctions under Rule 11 without more indicia of bad faith in the filing of the claim.

For the above reasons we conclude that Malone's third party complaint, which was filed within the district court's deadline, was supported by plausible legal arguments. Additionally, the record demonstrates no objective bad faith or improper purpose of Malone or its attorney in filing the complaint. The district court therefore abused its discretion in imposing sanctions against Malone. Accordingly, we vacate the sanctions order and remand this case to the district court for further proceedings.

VACATED and REMANDED.