■ EDDIE PINKNEY et al., Appellants, v CITY OF NEW YORK, Respondent, et al., Defendant.—In consolidated negligence actions to recover damages for personal injuries, plaintiffs appeal from so much of an interlocutory judgment of the Supreme Court, Queens County, dated June 16, 1975, as is against them and in favor of defendant City of New York, upon the trial court's dismissal of the complaint against said defendant at the close of all the evidence at a jury trial of the issues of liability only. Interlocutory judgment affirmed, insofar as appealed from, without costs. We concur with the Trial Term that, under the facts herein, no *special* duty arose to require the police to give plaintiff Eddie Pinkney protection and accordingly the defendant city cannot be subjected to liability for any resultant injuries *(Riss v City of New York,* 22 NY2d 579; cf. *Evers v Westerberg,* 38 AD2d 751, affd 32 NY2d 684). Rabin, Acting P. J., Latham and Brennan, JJ., concur; Cohalan and Munder, JJ., dissent and vote to reverse the interlocutory judgment insofar as appealed from and to grant a new trial on the cause of action against the defendant City of New York, with the following memorandum: On February 5, 1971 at about 11:30 P.M., plaintiff Eddie Pinkney, who will be referred to throughout as plaintiff, inasmuch as his coplaintiff wife has merely a derivative action (see *Millington v Southeastern Elevator Co.,* 22 NY2d 498), was driving a borrowed automobile in the vicinity of Marathon Parkway in Queens County. He had used the car on several prior occasions, with no untoward incident. As he turned left into the parkway (a two-lane highway) the vehicle stalled and the lights on the car went out. The night was dark, moonless and somewhat foggy. Some of the street lights nearby were not working due to a prior blackout. When the car stalled it was athwart the southbound lane at an angle, with the front of the vehicle pointing generally northeast, half facing oncoming traffic. The owner of the car, an automobile mechanic by trade, kept a spare battery and "jumper" cable in the trunk, a fact known to plaintiff. Accordingly, and in the dim light, he searched out the items in the hope of getting the car started. He had previously tried to push the car out of harm's way without success. With both the trunk lid and the front hood up, he set to work. At that moment a marked city police car with two uniformed policemen inside it stopped alongside. The driver asked him what he was doing. He told him. With that the driver said, "Hurry up and get it out of here." He drove off leaving plaintiff and the car in its dangerous and exposed position. As was readily foreseeable, a vehicle operated by codefendant Clapp came over the crest of a hill about three city blocks north of where Pinkney was still trying frantically to extricate himself from his perilous predicament. Clapp's vehicle crashed into the borrowed car and inflicted severe and serious injury upon plaintiff. We freely concede at the outset that "It is well settled that a

municipality, acting in its governmental capacity for the protection of the general public, cannot be cast in damages for a mere failure to furnish adequate protection to a particular individual to whom it has assumed no special duty" *(Evers v Westerberg,* 38 AD2d 751, affd 32 NY2d 684). As we view the unusual factual circumstances present at bar, however, a special duty was assumed the moment the police officers stopped the city police car and observed plaintiff's plight, but they did nothing to assist him. "Danger invites rescue. The cry of distress is the summons to relief", Judge Cardozo said in *Wagner v International Ry. Co.* (232 NY 176, 180). The facts in *Wagner* show that, upon rounding a curve, a passenger fell from one of the railroad cars. His plaintiff cousin sought to rescue him, to the knowledge of the defendant's employees, and was himself hurt. The court noted (p 182): "Whether Herbert Wagner's fall was due to the defendant's negligence, and whether plaintiff in going to the rescue, as he did, was foolhardy or reasonable in the light of the emergency confronting him, were questions for the jury." Also, the court said (p 180), citing *Ehrgott v Mayor, etc., of N. Y.* (96 NY 264, 280, 281), that "The risk of rescue, if only it be not wanton, is born of the occasion. The emergency begets the man. The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had". In *Ehrgott,* a horse-carriage driven by the plaintiff, was caused to fall into a "ditch in the street" (p 278), as a result of which he sustained injuries. The defendant city claimed to be free of liability because it did not control the streets, and that the park commissioners did. The court disposed of this argument by remarking (p 273) that "The city must act through officers and agents, and it is for the legislature to determine what powers and duties shall be devolved upon them. * * * If they are provided by law, and authorized to discharge a corporate duty which rests upon the municipality, then in the discharge of that duty they represent the municipality, and it may be chargeable with their *misfeasance* and *nonfeasance"* (emphasis in original). With respect to policemen, it is axiomatic that police patrol cars are on the public highway to protect the general public and to cause obstructions to be removed from the highway that would impede the orderly flow of traffic. Police department rules and procedures (ch 15, § 4.0, p 171) state, *inter alia,* that "The chief objective of traffic law enforcement is to prevent accidents and reduce congestion." When the officers came upon plaintiff on this occasion he was flying every flag of physical distress. His predicament should have alerted them to the necessity of getting the disabled car off the road before an accident occurred. While "comparisons are odorous",[1] it is safe to assume that even Dogberry—that classic symbol of police pomposity and stupidity—would have perceived the inherent danger in the situation and would have taken steps to avert the foreseeable and frightful consequences.[2] In *Maloney v Scarfone* (25 AD2d 630), a 17-year-old passenger was sitting in an otherwise unoccupied automobile. He had no license to drive and was unskilled in the operation of motor vehicles. A policeman ordered him to move the automobile. Despite his protestations the officer insisted and the young man complied. In so doing he killed a pedestrian. The Appellate Division, First Department, in reversing the trial court and reinstating the complaint of the deceased's estate and in ordering a new trial as against the defendant city, said (p 631): "While it is highly unlikely that a policeman, informed that a youngster

---

1. Much Ado About Nothing, act 3, scene 5.
2. Plaintiff lost his right leg as a result of the accident.

could not drive and did not possess a driver's license, would direct him to move a car in busy mid-Manhattan, none of us would hold that such testimony is incredible as a matter of law." At bar, we have the police driver, a man of 18½ years' experience on the force. Accepting the word of plaintiff (as we must do where a complaint is dismissed), the officer made no proffer of assistance, but cavalierly ordered Pinkney to "hurry up and get it out of here." The city argues that the policeman did not perform an affirmative act and cannot be held liable. To this, plaintiff responds that the act of stopping the police car was affirmative; the perilous situation presented alerted the policeman to the need to act; the order to move was affirmative. In many like situations a police driver would interpose his car between the anticipated oncoming traffic, flash all his lights, including the turret light on top of the vehicle and, if necessary, telephone for assistance. In *Thain v City of New York* (35 AD2d 545) an unmarked police car was in hot pursuit of a speeding motor vehicle. Both cars ran several red traffic lights. Evidence established to the jury's satisfaction that the pursuer did not flash signal lights or sound a siren. The plaintiff was struck by the fleeing car. Commenting on this state of facts, this court noted (p 546): "A municipality is not to be held liable for the act of its police officers in undertaking a pursuit of a traffic violator. The police have a duty to undertake the pursuit. * * * The police officers, however, are not immune from their own acts of negligence which factually may be found to be a proximate or concurrent proximate cause of the accident. In the present case the jury could clearly find that the police officers did not sound their siren or operate their flashing lights during the pursuit." On the issue of proximate cause in the instant action, the jury, if the case against the city had been submitted to it, might well have found that the action of the police officer in failing to protect plaintiff's car was a proximate or concurrent proximate cause of the accident. There are many other cases which involve exceptions to the general rule enunciated in *Evers v Westerberg (supra)* and we are of the view that plaintiff's case should join the list. (See, in this connection, *McCrink v City of New York,* 296 NY 99 [an off-duty policeman, who was known to be a heavy drinker and who had been involved in prior derelictions, shot and killed the plaintiff's intestate—a new trial was granted after the Appellate Division reversed a judgment in favor of the plaintiff and dismissed the complaint on the law]; *Schuster v City of New York,* 5 NY2d 75 [the defendant city owed a duty to protect a civilian informer after the city authorities had sent out a call to its citizenry for help in apprehending a known criminal—judgment was reversed and the city's motion to dismiss the complaint was denied]; and *Smullen v City of New York,* 28 NY2d 66 [a trench excavation caved in after the defendant city's inspector had approved it despite several patent violations—judgment in favor of the plaintiff, which was reversed in Appellate Division, was reinstated].) We turn to a consideration of the rules and regulations of the New York City Police Department. The trial court refused to allow them into evidence, after a proper offer of proof was made. Since they represent a standard by which the members of the force are presumed to act, we think they were admissible. In *Florence v Goldberg* (48 AD2d 917) we recognized the proper admission of the rules. There, a child was injured because a school crossing guard was absent and the police department had failed to provide a substitute. On that occasion we said (p 917): "The claim against appellant City of New York, in negligence, is that contrary to departmental regulations, the police had failed to assign a substitute for the absent crossing guard. Police Department rules and regulations provide that, when

unable to report for duty, a school crossing guard 'shall notify the [police precinct] desk officer sufficiently in advance so that other arrangements can be made for covering the crossing.' (Police Dept of N.Y.C., Rules and Regulations, ch 23 § 12.1)." Here, too, plaintiff should have been permitted to exhibit the rules and regulations and a manual of standard operating procedures, if there be one, to the jury to have their applicability determined, as an issue of fact. And as a corollary, the police officers' testimony concerning their duties and practices should have been submitted to the jury.