INGRID YEARWOOD, as Administratrix of the Estate of JOEL YEARWOOD and Another, Respondent, v TOWN OF BRIGHTON, Appellant.

Fourth Department, May 25, 1984

APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle* (*Michael R. Wolford* of counsel), for appellant.

*Palmiere & Pellegrino, P.C.* (*Norman A. Palmiere* of counsel), for respondent.

*John D. Doyle, County Attorney* (*Deborah Gerber Farber* of counsel), for Monroe County Sheriff, *amicus curiae.*

OPINION OF THE COURT

HANCOCK, JR., J.

Once again an appeal in our court concerns the responsibility of a municipality for conduct of its police officers (see *Gallogly v Village of Mohawk,* 96 AD2d 710; *De Long v County of Erie,* 89 AD2d 376, affd 60 NY2d 296; *Dutton v City of Olean,* 60 AD2d 335, affd 47 NY2d 756; *Zibbon v Town of Cheektowaga,* 51 AD2d 448, app dsmd 39 NY2d 1056). The established rule as reiterated in *De Long v County of Erie* (60 NY2d, at p 304), is that a municipality cannot be held liable for negligence in the performance of a police function "unless a special relationship existed between the municipality and the injured party". In *De Long,*

a special relationship was created and liability imposed where the victim relied on the assurance of a complaint writer answering her call for immediate assistance that help was coming "right away", and such reliance increased the risk. Liability depended on the basic principle that "[i]f conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward" (*Moch Co. v Rensselaer Water Co.,* 247 NY 160, 167 [Cardozo, Ch. J.]).

Here, the Town of Brighton police investigated a domestic quarrel and left after advising plaintiff that they could not arrest her estranged husband, who had threatened to kill her, or remove her children from the family home which he had threatened to burn. Plaintiff has recovered a jury verdict for the wrongful deaths and conscious pain and suffering of her two sons, ages 3 and 7, who died in a fire set in their home by the husband several hours later. The town has appealed. Because, as distinguished from *De Long,* there is no showing that the police conduct here had gone forward to such a point that failure to do more resulted in "positively or actively * * * working an injury" (*Moch Co. v Rensselaer Water Co., supra,* p 167), we must reverse and dismiss the complaint as a matter of law.

Plaintiff's evidence, including portions of a deposition of Officer Belle-Isle read into the record as part of her case, is that on Saturday evening, February 2, 1980, Officers Belle-Isle and Gardner and their superior, Sergeant O'Grodnik, investigated a report of domestic difficulties at the home of plaintiff and her husband John Yearwood and their two children. After a brief conversation with Yearwood, O'Grodnik and Gardner left and Belle-Isle went to talk with plaintiff at a neighbor's, where she was staying temporarily. There Belle-Isle learned that Yearwood had beaten plaintiff and had threatened to kill her and to burn down their house. Plaintiff told Belle-Isle that she feared for her children, although, according to Belle-Isle, she could give no specific reason. Both plaintiff and her lawyer, who talked with Belle-Isle on the telephone, requested that he arrest Yearwood and remove the children from the

home. Belle-Isle told the attorney that he could not make an arrest because he did not witness the assault and there were no visible injuries. Belle-Isle also reportedly told plaintiff's lawyer that she could make out a complaint for her husband's arrest but not until Monday. At this point, Belle-Isle contacted Sergeant O'Grodnik who instructed him to go to the Yearwood home, to see if he could remove the children without objection by Yearwood, and, if not, to remove them over objection only if he found that the children had been abused or threatened or that Yearwood could not care for them properly.

Belle-Isle and another officer who had arrived to assist him accompanied plaintiff back to her home where at first Yearwood yelled at them through a window and refused to open the door. He threatened a "showdown", but finally let them in. Upon going upstairs to retrieve some belongings so she could spend the night at a neighbor's, plaintiff discovered that her clothes had been slashed, and she showed Belle-Isle the ruined clothing as well as the windshield of her car, which Yearwood had apparently smashed. The testimony of plaintiff concerning the discussions with Yearwood about the children differs slightly from that of Belle-Isle. Her version is that she told Yearwood that she wanted to take the children but he refused. The police, she said, did nothing further about removing the children and the only further discussion about them concerned arrangements for their care on Monday when Yearwood would have to work. According to Belle-Isle, when plaintiff asked Yearwood if she could take the children, Yearwood asked the children if they wanted to leave; the older one merely shrugged and the younger made no sign at all; Yearwood then said that the children would stay and plaintiff said no more about the matter.

On returning with plaintiff to the neighbor's, Belle-Isle again spoke to her attorney and told him that the police under the circumstances had no authority to remove the children. The plaintiff went to a friend's home where she spent the night. At about 3:30 A.M. the following morning, Yearwood set the fire in which he and his sons perished.[*]

---

[*] There is no dispute concerning the cause of the fire. Corey, a Town of Brighton police investigator, testified that the gasoline tank of the automobile in the garage had been punctured and a screwdriver and a pail containing gasoline were found nearby. In

Plaintiff's undisputed testimony is that at no time did Belle-Isle or any other officer question Yearwood about the threats or ask plaintiff whether she had any marks on her body from the alleged assault. There is no evidence that Yearwood had ever harmed or threatened the children; to the contrary Belle-Isle stated without contradiction that when he asked plaintiff if Yearwood had ever done so, she said no.

We turn to a discussion of plaintiff's contention that this case falls within the "special relationship" exception to the general rule that "a municipality cannot be held liable for negligence in the performance of a governmental function" (*De Long v County of Erie,* 60 NY2d, at p 304). At the outset, we note that there is no evidence and, indeed, no contention that Belle-Isle's statements could be construed as assurances that the police would provide continued police assistance. In this respect, the case differs markedly from *De Long* where the victim reported to the 911 emergency telephone system that someone was trying to break into her house and, in response to her plea for help, was told, "Okay, right away", and *Zibbon v Town of Cheektowaga* (51 AD2d 448, app dsmd 39 NY2d 1056, *supra*) in which the police, alerted that an armed and dangerous man had threatened to kill the victims, told them that they would have cars in the area and would keep a routine check on their house.

Nor is there anything about the police conduct which, despite the absence of verbal assurances, could have led plaintiff to assume that they would give any further aid. On the contrary, Belle-Isle's statements and the actions of the officers in concluding their investigation and leaving the scene signified unmistakably that they intended to do no more. Thus, the case is distinguishable from *Florence v Goldberg* (44 NY2d 189) where the police had undertaken to provide crossing guards and the infant plaintiff's mother in reliance on their continuing to do so permitted her child to go to school unattended. Nor did the officers in responding to the complaint create a special relationship such as

Corey's opinion, Yearwood had died in the dining room near the origin of the fire — which had been started with an accelerant — and the boys had been in the bedroom above.

that between the informer and the police in *Schuster v City of New York* (5 NY2d 75) which gave rise to a special duty to provide continued protection.

Plaintiff argues that despite the lack of an express or implied pledge of further aid, liability should attach because of Belle-Isle's negligence in evaluating the situation, in wrongfully declining to arrest Yearwood and remove the children, and in improperly advising plaintiff and her lawyer that she could do nothing about arresting Yearwood until Monday. Again the crucial missing elements are proof of reliance and proof of increased risk. Belle-Isle's statements that under the circumstances he could do nothing about removing the children or arresting Yearwood could, by their very nature, have induced no action or omission by plaintiff or her attorney. And as for his statement that plaintiff would have to wait until Monday to get an arrest warrant, there is no showing that plaintiff took Belle-Isle's advice on the matter rather than that of her own attorney or that, but for the statement, she or her attorney might have done something differently.

In essence, the claim here is that the police were negligent in not perceiving Yearwood's state of mind and recognizing that his threat to burn the house down was meant to be taken seriously, something that plaintiff herself, who had heard such threats in the past, apparently did not sense. Here, with the benefit of hindsight, it appears that, both before and after the police visit, so long as they were in the house with Yearwood, the children were exposed to a danger, the gravity of which was not appreciated. Tragically, the police did not act to reduce the danger. But they did nothing to enhance it. Police officers in exercising their judgment, as they frequently must, in dealing with domestic quarrels cannot be expected to predict and prevent irrational behavior, and the law does not impose such a responsibility. Just as "the mere failure to uncover fire and safety violations during inspection clearly would not constitute a sufficient predicate for imposing liability on the town" (*Garrett v Holiday Inns,* 58 NY2d 253, 262), so the failure of the police here to perceive the danger is, without more, not enough. "Although a refusal by the police to render assistance to an individual can have serious effects,

a municipality cannot be cast in damages for the police failure to perform unless the plaintiff can show that the police owed a 'special duty' to him upon which he could rely" (*Malerba v Incorporated Vil. of Huntington Bay*, 78 AD2d 899).

The judgment should be reversed and the complaint dismissed.

DILLON, P. J., CALLAHAN, O'DONNELL and MOULE, JJ., concur.

Judgment unanimously reversed on the law, without costs, and complaint dismissed.