OPINION OF THE COURT
Alexander, J.
We have only recently reaffirmed the well-settled rule that in order for liability to be imposed upon a municipality for the failure to provide police protection to a particular individual, there must be proof of a "special relationship” between that person and the municipality (see, Cuffy v City of New York, 69 NY2d 255). This rule is based upon sound policy considerations which justify its existence, explain its evolution and demonstrate its appropriate application to the facts of this case.
I
The following salient facts as revealed by the record are undisputed. On April 20, 1984, as she was entering her car in a drug store parking lot, plaintiff, Deborah Kircher, was accosted by one Brian Blanco, assaulted and pulled into the car by Blanco, who then sped off. These events were witnessed by Karen Allen and Richard Skinner, who heard plaintiff’s screams as they were entering their car which was parked in front of the Kircher vehicle. As that car sped off, Allen and Skinner gave chase. Skinner lost sight of plaintiff’s car a block or so from the parking lot, but in trying to relocate it came *254 upon a Jamestown police officer, Bruce Carlson, who was giving assistance to the driver of a disabled municipal vehicle. Skinner, who was acquainted with Carlson, told him what they had observed, giving him a description of Blanco and the license plate number and description of plaintiffs automobile. Skinner also indicated to Carlson that he wasn’t sure whether it was a "domestic scene or girlfriend/boyfriend scene” but that there was "something really wrong with it”. Skinner and Allen left after Carlson advised them that he would "call it in” and returned to the scene of the assault where they obtained plaintiffs name and address 'from the drug store pharmacist. They then drove by plaintiffs house two or three times "to see if the car was there”, but made no further effort to make any additional report to the police, believing that the report to Carlson would suffice. As it happened, however, Carlson never reported the incident and had taken no further action on the matter.
Meanwhile, Blanco had driven plaintiff to the Town of Gerry, New York, where he repeatedly raped and assaulted her, fracturing her larynx and inflicting numerous other injuries. After brutalizing her, Blanco locked plaintiff in the trunk of her car from which she was rescued some 12 hours later. In her affidavit opposing summary judgment, plaintiff states that she observed Skinner and Allen in the parking lot and during their rescue attempt but that at some point she realized "the automobile being operated by Mr. Skinner was no longer in pursuit of my vehicle”. Additionally, she states that throughout her abduction her assailant operated her automobile "on main thoroughfares in heavy traffic”.
Plaintiff commenced separate actions against the City of Jamestown and Carlson, later consolidated by Supreme Court, charging that Carlson was negligent in failing to render assistance at the time of the incident and that the City was vicariously liable for Carlson’s negligent conduct. Defendants moved to dismiss the complaints for failure to state a cause of action or, alternatively, for summary judgment, contending that plaintiff had not demonstrated the existence of a "special relationship” between herself and the municipality.
Supreme Court denied defendants’ motion. Relying heavily on this court’s decision in Crosland v New York City Tr. Auth. (68 NY2d 165),[1] that court concluded that Carlson owed a duty to plaintiff "to do more than acquiesce upon learning that a *255 crime had just been committed” and that the breach of such duty could constitute negligence making defendants liable for any resulting injuries.
The Appellate Division reversed and granted defendants’ motion for summary judgment. The court concluded that plaintiffs mere status as a potential crime victim did not give rise to a "special relationship” between herself and the municipality such as would permit the imposition of liability against defendants. The court noted further that the evidence did not establish any direct contact between plaintiff and defendants, that she relied to her detriment on assurances provided by defendants, or that defendants’ affirmative conduct created a duty to act in her behalf. Thus, the court held that the requisite "special relationship” had not been established and commented that the "failure to respond to the report of possible criminal activity or to offer assistance in a situation arguably requiring police intervention amounts to a failure to provide police protection to the general public and is within the scope of governmental immunity” (142 AD2d 979, 980). We granted leave to appeal and now affirm.
II
The decisions of this court requiring the existence of a "special relationship” between the claimant and the municipality before the latter may be held liable to the former for the negligent exercise of a governmental function such as providing police protection are legion (see, e.g., Bonner v City of New York, 73 NY2d 930; Marilyn S. v City of New York, 73 NY2d 910, affg for reasons stated below 134 AD2d 583; Cuffy v City of New York, 69 NY2d 255; Sorichetti v City of New York, 65 NY2d 461; Yearwood v Town of Brighton, 64 NY2d 667, affg for reasons stated below 101 AD2d 498; Vitale v City of *256 New York, 60 NY2d 861; De Long v County of Erie, 60 NY2d 296; Weiner v Metropolitan Transp. Auth., 55 NY2d 175; O'Connor v City of New York, 58 NY2d 184; Garrett v Holiday Inns, 58 NY2d 253; Glick v City of New York, 42 NY2d 831, affg on mem below 53 AD2d 528; Florence v Goldberg, 44 NY2d 189; Pinkney v City of New York, 40 NY2d 1004, affg on mem below 50 AD2d 928; Evers v Westerberg, 32 NY2d 684, affg on opn below 38 AD2d 751; Riss v City of New York, 22 NY2d 579; Motyka v City of Amsterdam, 15 NY2d 134; Schuster v City of New York, 5 NY2d 75; Steitz v City of Beacon, 295 NY 51). Our consistent refusal to impose liability in the absence of such a relationship rests primarily upon the commonly recognized principle that a municipality’s duty to provide police protection ordinarily is one owed to the public-at-large and not to a specific person or class (Cuffy v City of New York, 69 NY2d 255, 260, supra; see also, Moch Co. v Rensselaer Water Co., 247 NY 160). Moreover, "a municipality’s provision of police protection to its citizenry has long been regarded as a resource-allocating function that is better left to the discretion of the policy makers” (Cuffy v City of New York, 69 NY2d, at 260, supra). As was recognized in Riss v City of New York (22 NY2d 579, 581-582, supra), "[t]he amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed”.
Nevertheless, where a municipality voluntarily undertakes to act on behalf of a particular citizen who detrimentally relies on an illusory promise of protection offered by the municipality, we have permitted liability because in such cases the municipality has by its conduct determined how its resources are to be allocated in respect to that circumstance and has thereby created a "special relationship” with the individual seeking protection. Correspondingly, it has limited the class of persons to whom it owes a duty of protection. In such circumstances, the municipality’s liability is not that of an insurer for failing to protect from harm a member of the general public, but rather liability is based upon the municipality’s own affirmative conduct which, having induced the citizen’s reasonable reliance, must be considered to have progressed to a point after which the failure to provide the promised protection will result not " 'merely in withholding a benefit, but positively or actively in working an injury’ ” (see, De Long v County of Erie, 60 NY2d 296, 305, supra; Moch Co. v Rensselaer Water Co., 247 NY, at 167, supra).
*257 As articulated by this court in Cuffy v City of New York (69 NY2d, at 260, supra), "[t]he elements of this ’special relationship’ are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking”. On the facts of the instant case, neither the requirement of direct contact nor of justifiable reliance has been satisfied. Plaintiff, by virtue of her unfortunate circumstances, could not communicate with the police and thus obviously could not rely on their assurances of assistance. Notwithstanding the sympathetic circumstances of this case, however, these requirements cannot simply be overlooked in order to permit this particular plaintiff to recover as the dissenters seem to suggest. To the contrary, the reasons for requiring direct contact and reliance by the injured party are rooted in policy considerations that compel the denial of recovery here.
The requirement of direct contact, which is closely related to the element of reliance, serves to rationally limit the class of persons to whom the municipality’s duty of protection runs and exists "as a natural corollary of the need to show a ’special relationship’ between the claimant and the municipality” (Cuffy v City of New York, 69 NY2d, at 261, supra). Generally, this contact must be between the injured party and the municipality. Though we have shown some flexibility in applying this requirement — for example permitting contact between the mother of an injured infant and the police to substitute for contact directly between the police and the infant (see, Sorichetti v City of New York, 65 NY2d 461, supra) —we conclude this requirement is not satisfied here where Skinner and Allen, although admittedly acting solely out of a sense of compassion, were complete strangers to plaintiff and plaintiff, in turn, was completely unaware of the assurances given her would-be rescuers (cf., Cuffy v City of New York, 69 NY2d 255, supra). It must be remembered that in Sorichetti there was an outstanding judicial order of protection signifying the municipality’s prior involvement in the domestic turmoil that ultimately led to the infant’s injuries, thus providing a justification for relaxing the direct contact re *258 quirement.[2] No such prior municipal involvement exists on the facts of the instant case. More importantly, the purpose of the special duty rule — to rationally limit the class of citizens to whom the municipality owes a duty of protection — would be significantly undermined by permitting contact between the police and a good Samaritan such as occurred in this case to satisfy the direct contact requirement.
In addressing the reliance element of the four-part test, we have very recently stressed that "the injured party’s reliance is as critical in establishing the existence of a 'special relationship’ as is the municipality’s voluntary affirmative undertaking of a duty to act” because it is that element that "provides the essential causative link between the 'special duty’ assumed by the municipality and the alleged injury” (Cuffy v City of New York, 69 NY2d, at 261, supra). It is readily apparent that this requirement is not satisfied on these facts since the helpless and isolated plaintiff could not even communicate with the police, much less rely on any promise of protection the police might have offered. Yet, although plaintiff’s failure to rely can be directly attributed to her dire circumstances, this does not, as the dissenters urge, provide a justification for ignoring the reliance requirement altogether. While we would agree that no rule should be so unyielding that it is mechanically applied without regard for its underlying purpose, a rule is simply not a rule if it can be summarily dismissed in order to achieve a desired result not in keeping with that purpose. Thus, contrary to the assertion of Judge Bellacosa, proof of the reliance of Skinner and Allen cannot "be transferred to the plaintiff’s benefit” (dissenting opn, at 265) for the obvious reason that proof of their reliance does not satisfy the policy concern underlying the reliance requirement —providing the "essential causative link” between the municipality and the alleged injury (Cuffy v City of New York, 69 NY2d, at 261, supra; see, Helman v County of Warren, 67 NY2d 799, affg for reasons stated below 111 AD2d 560).
We cannot conclude, as does Judge Bellacosa, that the facts of this case demonstrate a "clear, continuous causal link” (dissenting opn, at 265) between the conduct of Officer Carlson *259 and plaintiffs resulting injuries. Absent evidence of reasonable detrimental reliance by the victim, the consequences of the municipality’s failure to act become far too speculative to allow as the basis of liability. In the instant case, for example, Skinner and Allen had lost sight of plaintiffs car before stopping to report the incident to Officer Carlson. There is simply no way of knowing whether they would have relocated the car and rescued plaintiff if they had resumed their rescue attempt instead of ending their pursuit in reliance on Carlson’s promise of assistance. Similarly, there is no way of ascertaining with any degree of certainty whether plaintiffs injuries would have been prevented if Carlson had reported the incident as promised. These speculations would not have arisen, however, if plaintiff — the injured party here — had detrimentally relied on the assurances of the police since such reliance would have transformed the municipality’s failure to act from the mere withholding of a benefit into the affirmative infliction of an injury (see, Moch Co. v Rensselaer Water Co., 247 NY, at 167, supra).
Requiring that there be such reliance is consistent with the purpose of the special duty rule to place controllable limits on the scope of the municipality’s duty of protection and to prevent the exception from swallowing the general rule of governmental immunity (see, Helman v County of Warren, 111 AD2d, at 562, supra). Absent this requirement, a municipality would be exposed to liability every time one of its citizens was victimized by crime and the municipality failed to take appropriate action although notified of the incident — so vast an expansion of the duty of protection should not emanate from the judicial branch. "Before such extension of responsibilities should be dictated by the indirect imposition of tort liabilities, there should be a legislative determination that that should be the scope of public responsibility” (Riss v City of New York, 22 NY2d, at 582, supra).
We note that it is not open to doubt that had plaintiff based her negligence action on the failure of the municipality to prevent the crime in the first instance by stationing police officers in the parking lot where she was assaulted, recovery would be precluded as such action would directly challenge the municipality’s allocation of scarce police resources for the protection of the general public (see, Crosland v New York City Tr. Auth., 68 NY2d 165, 169, supra; Weiner v Metropolitan Transp. Auth., 55 NY2d, at 181, supra; Riss v City of New York, 22 NY2d 579, supra). A different result is not indicated *260 here where plaintiff essentially argues that, after the inception of criminal activity, the Jamestown police force negligently failed to come to her rescue. How the police choose to deal with the many requests for assistance they receive daily are aspects of their more general duty of protection owed to the public and cannot be transformed on the facts of this case into a special duty running to the injured plaintiff (see, De Long v County of Erie, 60 NY2d, at 304, supra; cf., Yearwood v Town of Brighton, 64 NY2d 667, supra; Pinkney v City of New York, 40 NY2d 1004, supra; Evers v Westerberg, 32 NY2d 684, supra). Thus, in the absence of facts showing that the City of Jamestown, through its police force, affirmatively undertook to protect plaintiff and plaintiff detrimentally relied on the municipality’s assurances of protection, there is nothing to distinguish this unfortunate plaintiff from the numerous other crime victims for whom, tragically, police assistance has arrived too late.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. Plaintiff similarly relies heavily upon Crosland in her argument to us. *255 Crosland, however, is inapposite. There, we addressed the standard of care owed by a publicly owned common carrier to its passengers and concluded that although the Transit Authority owed no "special duty” to the passenger to provide police protection, it was still statutorily responsible "for the negligence of its employees in the operation of the subway system” (Crosland v New York City Tr. Auth., 68 NY2d 165, 169-170; see, Public Authorities Law § 1212 [3]). Thus, we held that the Authority could be held liable for the negligent failure of its employees to summon aid while the passenger was fatally assaulted. Crosland has no application here, where it is undisputed that plaintiff seeks to hold defendants liable for the negligent exercise of a governmental function requiring the existence of a "special relationship” between plaintiff and the municipality.

. Another factor explaining our decision in Sorichetti was the police department’s specific "knowledge of Frank Sorichetti’s violent history, gained through and verified both by its actual dealings with him, the existence of the order of protection, and its knowledge of the specific situation in which the infant had been placed” (Sorichetti v City of New York, 65 NY2d 461, 469).