OPINION OF THE COURT
Edwin Margolis, J.
Claimant’s decedent was murdered on October 27, 1985, by John W. Kugler, Jr., who was an escapee from the Capital District Psychiatric Center (CDPC) in Albany, New York. In this action, claimant seeks damages for the State’s negligence (1) in permitting Kugler to escape from CDPC and (2) in not taking appropriate action to require Kugler’s return to New York after he was located in Vermont and the Vermont State Police refused to take him into custody.[1]
On August 9, 1985, John W. Kugler, Jr. was arrested in the Town of Hebron, Washington County, New York, and charged with assault in the third degree, a class A misdemeanor (Penal Law § 120.00). Kugler had previously been hospitalized for two months at the Central New York Psychiatric Center at Marcy, New York, from February 14, 1984 to April 13, 1984. He was there diagnosed as suffering from "schizophrenia, undifferentiated, chronic with acute exacerbation.” While in custody in the Washington County Jail, Kugler engaged in bizarre behavior (e.g., drinking from the urinal). As a result, the Hebron Town Justice issued an order of examination pursuant to CPL 730.30.
In accordance with such order, two psychiatrists independently examined Kugler and determined that he was schizophrenic and incompetent to assist in his own defense in the pending criminal matter. Based upon the reports of both psychiatric examiners, the local criminal court issued a final *385 order of observation pursuant to CPL 730.40, committing Kugler to the custody of the Commissioner of Mental Hygiene for care and treatment for a period not to exceed 90 days. As required by subdivision (2) of section 730.40, the Town Justice dismissed the accusatory instrument filed against Kugler. As provided in said subdivision, such dismissal constitutes a bar to any further prosecution of the criminal charges. Thus, Kugler was committed to the custody of the Commissioner as a civil status patient.
On September 12, 1985, under the authority of the final order of observation, the Bureau of Forensic Services of the Office of Mental Health determined that Kugler should be committed to the CDPC. Upon his admission to CDPC, Kugler was placed in an open (unlocked) unit and his staff psychiatrist, Flor Bissonette, M.D., initially placed him on "close” observation status. Thereafter, Dr. Bissonette ordered Kugler’s observation status changed to less restrictive Level I on September 13, 1985, and to still less restrictive Level II on September 23, 1985. A patient on close observation is constantly observed by an attendant, a Level I patient is not allowed to leave the unit and requires observation about every 30 minutes, and a Level II patient may go to activities outside the unit only when accompanied by an escort.
During the week preceding Kugler’s escape on September 24, 1985, Dr. Bissonette recorded in her physician’s progress notes that Kugler threatened to become violent if he was not discharged. Hostile behavior was also noted in two nursing notes, but he never actually assaulted anyone at CDPC. At 11:30 A.M., on September 24, 1985, Kugler again requested of Dr. Bissonette that he be discharged stating that "this place is making me nervous — I don’t have to be here.” At this time, Dr. Bissonette also recorded that Kugler was exhibiting "some incoherence with no insight to his problem, lack of sound judgment and resistance to taking medication.” At 2:00 p.m. of that day the CDPC staff were unable to locate Kugler, who had apparently left by walking out the door of the open unit.
The first allegation of negligence — that the State breached its duty to the outside public by negligently permitting Kugler to escape — is based on claimant’s contention that Kugler should not have been assigned to an open unit and that Dr. Bissonette should not have reduced his level of observation from close observation to Level I to Level II. The foregoing facts and decedent’s history were the only evidence introduced with respect to this cause of action. Claimant’s counsel argues *386 that such evidence constitutes and is sufficient to prove ordinary common-law negligence. The court disagrees.
In Bleiler v Bodnar (65 NY2d 65, 72), the Court of Appeals established that any negligent act or omission of a physician, a hospital or a nurse that "constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician constitutes malpractice.” In contrast, wrongful acts or omissions which are "independent of the hospital’s [or doctor’s or nurse’s] obligation to provide proper medical treatment” sound in common-law negligence (at 72). As cogently stated by the Third Department in Miller v Albany Med. Center Hosp. (95 AD2d 977, 978), "[t]he distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of the common everyday experience of the trier of the facts (Twitchell v MacKay, 78 AD2d 125, 127; Hale v State of New York, 53 AD2d 1025, mot for lv to opp den 40 NY2d 804).” The critical question, therefore, is the nature of the duty to the decedent that defendant is alleged to have breached.
The court finds that the gravamen of this cause of action relates solely to the placement of Kugler in an open unit and to the level of care and supervision accorded him. The decision as to which program to place a patient in or which level of care to place him on is "a medical judgment for which no liability may be imposed”. (Killeen v State of New York, 66 NY2d 850, 851, citing Cameron v State of New York, 37 AD2d 46, affd 30 NY2d 596.) In Topel v Long Is. Jewish Med. Center (55 NY2d 682, 684), the Court of Appeals "conclude[d] that the decision whether to keep Mr. Topel on constant observation as contrasted with observation at 15-minute intervals was a matter of professional judgment for which defendant doctor cannot be held [liable].” Since claimant is challenging the decisions of professional State employees with respect to their assessment of Kugler’s condition and the degree of supervision required by such condition, this cause of action sounds in medical malpractice. (See, Fox v White Plains Med. Center, 125 AD2d 538; Stanley v Lebetkin, 123 AD2d 854, 855.)
Because a jury or other trier of the facts ordinarily is not deemed to possess sufficient knowledge, training or experience to have attained the competence to pass judgment on questions of medical science or practice, the general rule is that a *387 party will be required to produce expert testimony to prove negligence. (See, Fiore v Galang, 64 NY2d 999; McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20; Prosser and Keeton, Torts §32, at 188 [5th ed].) Inasmuch as claimant introduced no expert medical opinion testimony to the effect that Dr. Bissonette’s assessment of Kugler’s condition and/or her determination of the degree of supervision required was a departure from accepted standards of medical practice, this cause of action must be dismissed for failure to make out a prima facie case. (Warner v Packer, 139 App Div 207, 214-215.)
The second cause of action alleges that the State failed to take proper follow-up action to require Kugler’s return to New York after he was located in Vermont. Shirley J. Staley, a registered nurse who was facility supervisor in 1985 at CDPC, testified that Kugler could not be located at approximately 2:00 p.m. on September 24, 1985. At 3:30 on that same afternoon, CDPC notified the Albany Police Department that Kugler was an escapee. This information was transmitted on the police teletype to all nearby police agencies. On October 5, 1985, CDPC received a telephone call that Kugler’s whereabouts were known to the Vermont State Police. The Vermont State Police informed Ms. Staley that Kugler declined to accompany them to the New York border and that they would not apprehend him. Ms. Staley thereupon telephoned Mrs. Shirley Lasky of the Mental Health Facility in Rutland, Vermont and requested assistance. Mrs. Lasky told Ms. Staley that the Vermont State Police could not take Kugler into custody unless he was observed acting erratically in Vermont. The next working day, Monday, October 7th, CDPC notified the Bureau of Forensic Services of the Department of Health and Kathleen Cavanaugh, who was forensic coordinator for CDPC. On October 8th, Ms. Cavanaugh personally contacted the Vermont State Police. They informed her they would not take Kugler into custody unless he was wanted on a criminal charge carrying a sentence of one year or more. They stated that in the absence of such a charge they would merely continue to observe him. On October 10th, Ms. Staley had a further conversation with the Vermont State Police who, at such time, informed her that they no longer knew of Kugler’s whereabouts.
The gravamen of this cause of action is the alleged failure of defendant’s employees to properly administer, implement and enforce section 67.07 of the Mental Hygiene Law. Said section sets forth an Interstate Compact on Mental Health to *388 which both New York and Vermont (18 Vt Stat Annot §§ 9001-9052) were signatories. Article V of such compact provides as follows: "Whenever a dangerous or potentially dangerous patient escapes from an institution in any party state, that state shall promptly notify all appropriate authorities within and without the jurisdiction of the escape in a manner reasonably calculated to facilitate the speedy apprehension of the escapee. Immediately upon the apprehension and identification of any such dangerous or potentially dangerous patient, he shall be detained in the state where found pending disposition in accordance with law.”
Before discussing the applicable law with respect to this cause of action, it must be pointed out that no definitive evidence was introduced with respect to the proper manner of implementation of this statute. The State of New York did contact, in the first instance, the Vermont State Police to apprehend Kugler and, after being turned down, did communicate with a State mental health facility in Rutland, Vermont. Again, there was a refusal to apprehend Kugler. No evidence was introduced with respect to any rule or regulation concerning procedures to be followed by New York Mental Health personnel. Claimant asserts that New York should have done "something more”. Claimant never articulated what this "something more” should have entailed and failed to introduce any standard, rule, regulation or practice with respect to the implementation, operation or interpretation of the Interstate Compact.
The negligence ascribed to the State of New York is that it failed to enforce an Interstate Compact (Mental Hygiene Law § 67.07). Manifestly such function, by its very nature, is inherently governmental and not proprietary and thus, absent a special duty, cannot constitute a basis for finding liability. In Sanchez v Village of Liberty (42 NY2d 876, 877-878, mod on other grounds 44 NY2d 817), the Court of Appeals held that "[ajbsent a special relationship creating a municipal duty to exercise care for the benefit of a particular class of individuals, no liability may be imposed upon a municipality for failure to enforce a statute or regulation (Motyka v City of Amsterdam, 15 NY2d 134, 139; see Smullen v City of New York, 28 NY2d 66, 72).” (See also, Kircher v City of Jamestown, 74 NY2d 251, 255-256; Kenavan v City of New York, 70 NY2d 558, 568; Cuffy v City of New York, 69 NY2d 255, 260; *389 Miller v State of New York, 62 NY2d 506, 510; O’Connor v City of New York, 58 NY2d 184, 189.)[2]
To establish such a special relationship, it is necessary for claimant to prove: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking” (Cuffy v City of New York, 69 NY2d 255, 260, supra). (See also, Kircher v City of Jamestown, 74 NY2d 251, 257-258, supra.) Because the statute involved and the facts of this case create no such special relationship, no liability may be imposed. “Completely absent in this case was any 'direct contact between agents of the municipality and the injured party’, upon which a special duty could be predicated” (Helman v County of Warren, 67 NY2d 799, 801) and, consequently, there was no reliance by decedent on any affirmative undertaking by the State.
The chief clerk is directed to enter judgment for defendant dismissing both causes of action of the claim.

. Claimant did not separately state and number each separate cause of action as required by CPLR 3014. Rather, he set forth several sentences in one paragraph alleging negligence. The court believes that such allegations can fairly be resolved into the two causes of action set forth herein. In addition, claimant’s posttrial memorandum discusses his claim substantially in terms of these two causes of action.

. It should be noted that the requirement of a special relationship applies only to the second cause of action (negligent State implementation of a statute) and not to the first cause of action (negligent State care of a psychiatric patient) (see, Schrempf v State of New York, 66 NY2d 289, 294).