■ MANUEL LORENZO et al., Appellants, v CITY OF NEW YORK et al., Respondents. [596 NYS2d 450] —In an action to recover damages for personal injuries and wrongful death, the plaintiffs appeal from a judgment of the Supreme Court, Kings County (Vinik, J.), dated August 4, 1989, which, upon a ruling granting the defendants' motion to dismiss the complaint made at the close of the evidence adduced at the trial, is in favor of the defendants and against the plaintiffs dismissing the complaint.

Ordered that the judgment is affirmed, with costs.

This case arises out of a bizarre and unfortunate incident following a fire in a residential building, in which a man posed as an American Red Cross volunteer arranged to relocate a few residents, and then inexplicably stabbed and attacked them, killing one of them. The issue on appeal is whether the defendants can be held liable for the failure of the police and firefighters to verify that the assailant was in fact from the American Red Cross, and for allegedly encouraging the victims to go with the assailant. We agree with the Supreme Court that the plaintiffs have failed to establish any basis for imposing liability on the defendants.

On October 15, 1983, at about 4:00 A.M., several fire and

police units responded to a report of a serious fire at 157 Smith Street, in Brooklyn. Among the residents of the building were the plaintiffs Gloria Roman and Christobal Marquez. The building's landlord was the plaintiff Manuel Lorenzo, who lived around the corner. After the fire was under control, Fire Department Battalian Aide John Gorman handed out to the fire victims slips which advised them to contact the American Red Cross for assistance in obtaining shelter, food, clothing, or other relief services. Such slips were routinely distributed at large fires pursuant to fire department regulations.

About 30 to 45 minutes after the firefighters arrived, a man, later identified as Jose Santiago, drove up to the fire scene in a *Daily News* delivery truck and parked between two fire trucks. (It was eventually determined that the truck was stolen.) Santiago exited the truck, approached Gorman, announced that he was from the American Red Cross, and asked if anyone had to be relocated. Santiago was not wearing any uniform but spoke well and appeared to know what he was talking about. Gorman asked Santiago for identification as a matter of routine. Santiago produced an identification card and badge. Gorman took a brief look but did not read or examine the credentials. Gorman then notified Battalian Chief Robert Hesse by "handie-talkie" that the American Red Cross was on the scene. Hesse, who had previously dealt with American Red Cross representatives at fire scenes, also took only a "cursory glance" at the badge and identification card. Thereafter, Hesse and Santiago briefly toured the building to check for habitability and agreed that the victims should be relocated.

The subsequent events are less clear. The plaintiff Marquez testified that, at one point, Santiago told him he was from the police, showed him a shield, and declared that he had the right to arrest him or anyone else. Santiago asked Marquez some questions and eventually said that he was going to arrest him because the fire started in his room. Santiago went into the building with Marquez and even directed Marquez to remove everything from his pants, presumably to ensure that he was not carrying any weapons. Believing that he had now been arrested, Marquez walked with Santiago to the *Daily News* truck, along with the plaintiff's decedent Gloria Roman. According to Marquez, Roman accompanied them because he had been arrested and there was a need for Roman to act as a Spanish-English interpreter. Notably, though, there was no evidence that any of the authorities on the scene condoned or

acquiesced in Santiago's questioning and purported arrest of Marquez.

On the other hand, Hesse recalled that he saw Santiago conversing with some of the victims. Hesse also admitted that he might have "collectively or individually" directed some of the fire victims to go with Santiago, who Hesse still believed was an American Red Cross worker. Moreover, the plaintiff Manuel Lorenzo testified that Hesse instructed him to go with Santiago. Referring to Santiago, Hesse reportedly said to Lorenzo, "I want you to go with this man. This man is going to bring the people to the shelter, and you are the landlord. Go with him". Lorenzo said that he would go with Santiago on the condition that Santiago later bring him back. Santiago agreed, so Lorenzo went with him to his truck, where Marquez and Roman were waiting.

After entering the truck, Lorenzo realized that he was out of cigarettes. He exited the truck, leaving the door open behind him, and went to his house around the block to retrieve his cigarettes. Santiago followed Lorenzo in the truck and then into his house. Once inside, Santiago brutally stabbed Lorenzo and stole $800 that was on a table. Santiago returned to the truck and drove off, telling Roman and Marquez that Lorenzo would follow in his own car. A few minutes later Santiago pulled the truck over and stabbed Marquez and Roman. Roman died later as a result of her injuries.

It is settled that "a municipality cannot be held liable for negligence in the performance of a governmental function, including police and fire protection, unless a special relationship existed between the municipality and the injured party" (De Long v County of Erie, 60 NY2d 296, 304). "The elements of this 'special relationship' are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured, (2) knowledge on the part of the municipality's agents that inaction could lead to harm, (3) some form of direct contact between the municipality's agents and the injured party, and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (Cuffy v City of New York, 69 NY2d 255, 260; see also, Kircher v City of Jamestown, 74 NY2d 251).

In the instant case, the plaintiffs have failed to demonstrate several of the elements necessary to establish the existence of a "special relationship". First, the defendants did not assume any affirmative duty to act on behalf of the plaintiffs Marquez and Roman. The only "direct contact" between those plaintiffs

and the firefighters was the distribution of the American Red Cross referral slips (see, *Kircher v City of Jamestown, supra;* cf., *Freidfertig Bldrs. v Spano Plumbing & Heating,* 173 AD2d 454). However, the fire department directive that American Red Cross referral slips be distributed to homeless fire victims was intended to benefit not merely the plaintiffs, but "all members of the general public similarly situated" (*Isaksson v Rulffes,* 135 AD2d 611, 613; *see also, Litchhult v Reiss,* 183 AD2d 1067).

Even assuming, *arguendo,* that the defendants affirmatively assumed a special duty to Marquez and Roman, there was no "justifiable reliance". Although Chief Hesse said that he might have "collectively or individually" directed some of the fire victims to go with Santiago, there is no evidence that Marquez or Roman accompanied Santiago because they were directed to do so by any firefighters. Marquez went with Santiago because Santiago told him that he was being arrested; Roman went with Santiago to act as an interpreter. Thus, Roman and Marquez failed to establish that they justifiably relied upon an affirmative undertaking of the defendants (see, *Kircher v City of Jamestown, supra; Cuffy v City of New York, supra; Shinder v State of New York,* 62 NY2d 945; *Isaksson v Rulffes, supra*).

Nor was there proof that Lorenzo reasonably relied on any assurances by the defendants. While Lorenzo testified that Hesse said that he should accompany Santiago, Lorenzo also indicated that he went with Santiago only after Santiago assured him he would give him a ride back. Lorenzo subsequently exited Santiago's vehicle and went to his house for some cigarettes. Regardless of whether the defendants had assumed any special duty to Lorenzo at this point, they could not anticipate that Santiago would follow Lorenzo into his home, stab him, and thereafter attack the other plaintiffs. Simply put, the criminal and unprovoked attacks by Santiago were "extraordinary and unforeseeable as a matter of law" and thus constituted an intervening and superseding proximate cause of the plaintiffs' injuries (*Santiago v New York City Hous. Auth.,* 63 NY2d 761, 763; *see also, Danielenko v Kinney Rent A Car,* 57 NY2d 198).

For the foregoing reasons, judgment as a matter of law was properly granted to the defendants (see, *Herrman v County of Orange,* 154 AD2d 342; *Helman v County of Warren,* 111 AD2d 560, *affd* 67 NY2d 799). Bracken, J. P., Lawrence, O'Brien and Santucci, JJ., concur.