■ FREDERICK THOMAS, SR., Respondent, v CITY OF AUBURN, Appellant. RUTH L. TILLMAN, as Administratrix of the Estate of JOHNNIE L. TILLMAN, Deceased, Respondent, v CITY OF AUBURN, Appellant. [629 NYS2d 585] —Order affirmed with costs. Memorandum: Defendant appeals from an order based upon a jury verdict finding that it was negligent in failing to provide adequate police protection to plaintiff Frederick Thomas, Sr., and plaintiff Tillman's decedent, Johnnie Lee Tillman. Testimony elicited by plaintiffs established that, shortly after 1:00 A.M on March 27, 1988, at Robie's Bar in Auburn, New York, Jimmy Lee Rouse engaged in a physical altercation with Thomas and Tillman and threatened to kill them. John Reddick, the bartender, escorted Rouse from the bar. Before leaving in a vehicle that he commandeered, Rouse shook his fist and threatened that he would be back. Reddick called the police. While waiting for the police to respond, Thomas and Tillman, the only remaining patrons, assisted Reddick in boarding up a window that Rouse had broken during the altercation. Two officers responded in marked police vehicles, interviewed the three men and were told of the death threat. The officers assured the three men that they could finish boarding the window and closing the bar; the officers told the men that they would go around the building and then escort them home. Reddick re-entered the bar and told Thomas and Tillman that they could continue to close the bar, and that they were being protected. Without advising the three men that they were leaving, the officers drove from the scene to search for the vehicle Rouse had been driving. Rouse returned to the bar and fired a shotgun, injuring Thomas and killing Tillman.

Defendant contends that the proof is legally insufficient to support the jury's finding that its police officers assumed a special duty to provide protection to Thomas and Tillman. We disagree. A jury verdict is supported by sufficient evidence if

"there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" *(People v Bleakley,* 69 NY2d 490, 495; *see also, Cohen v Hallmark Cards,* 45 NY2d 493, 499). That standard was met in this case.

Reddick testified that the officers said that he, Thomas and Tillman could "go ahead and board up the window and cash out"; that "they would be there to, you know, make sure we could get out of the property"; and that "they would be on the property to have an escort out so I could get home". Thomas testified that he had stepped back and did not hear the officers' assurance. According to Thomas, the officers continued to talk with Tillman and Reddick and, when Reddick came inside the bar, Reddick told Thomas that he and Tillman could remain "because we was being protected." That evidence is sufficient for the jury to have found that the police assured Reddick, Thomas and Tillman that they would have police protection.

Even assuming, as defendant contends, that both Thomas and Tillman were inside the bar when the assurance of protection was made to Reddick outside the bar, the assurance was extended to all three men, and the circumstances were such that the officer who gave the assurance knew, or should have known, that it would be conveyed to Thomas and Tillman. This is not an instance where the plaintiff was unaware that the assurance had been made *(cf., Kircher v City of Jamestown,* 74 NY2d 251) or where the police did not extend the assurance for the benefit of the victim *(cf., Cuffy v City of New York,* 69 NY2d 255). The police had direct contact with Thomas and Tillman, who were physically present in the area to be protected, and their interests in receiving protection were the same as that of the bartender *(see, Cuffy v City of New York, supra,* at 261-262). "It would thus be wholly unrealistic to suggest that [Thomas and Tillman] were in no different position from any other citizen or that the City owed them no 'special duty' simply because [Reddick], rather than they, had been the party" in direct contact when the assurance was made *(Cuffy v City of New York, supra,* at 262-263). The jury could also reasonably infer that Thomas and Tillman, by remaining to assist Reddick in closing the bar, justifiably relied upon the assurance of protection. The proof shows that neither Thomas nor Tillman was aware that the officers had left the scene and had withdrawn the promised protection.

Further, the evidence elicited by plaintiffs is sufficient to support the jury's findings that the officers were aware of the seriousness of the threat and that they knew, or should have

known, that inaction on their part would lead to harm. One of the officers acknowledged that the threat made by Rouse amounted to a death threat. The officers stated that they would search around the building and then escort the men home. Instead, they left the scene to search for Rouse. An expert testified that the threat constituted a death threat requiring a measure of protection and that the police were negligent in leaving the premises unprotected. The jury could reasonably conclude from that evidence that the officers perceived that the threat was serious and that the three men were in need of protection.

Lastly, Supreme Court did not err in allowing an expert to testify regarding the reasonableness and propriety of police action or inaction in providing protection (see, *Velez v City of New York,* 157 AD2d 370, 373-374, *lv denied* 76 NY2d 715; *Anderson v Muniz,* 125 AD2d 281, 283-284; *Austin v City of Scottsdale,* 140 Ariz 579, 684 P2d 151).

All concur except Lawton, J., who dissents and votes to reverse in the following Memorandum.

Lawton, J. (dissenting). I respectfully dissent. The majority has extended the "special relationship" exception well beyond existing limits (*Kircher v City of Jamestown,* 74 NY2d 251, 255-256). Under the holding of the majority, defendant is being held liable for the wanton injury of plaintiff Frederick Thomas, Sr., and the killing of plaintiff Tillman's decedent, Johnnie Lee Tillman, by Jimmy Lee Rouse because its police officers had left the crime scene in an effort to apprehend the perpetrator, who had commandeered a vehicle and its driver to escape. By so holding, the majority now includes within the "special relationship" exception liability for the police " 'withholding a benefit' " rather than limiting it to the police " 'positively or actively in working an injury' " (*De Long v County of Erie,* 60 NY2d 296, 305; *see, Kircher v City of Jamestown, supra,* at 256).

The evidence, even viewed in the light most favorable to plaintiffs, is legally insufficient to establish that defendant, through its police officers, assumed a "special relationship" with Thomas and Tillman. The vague and somewhat garbled assurances by the police officers to the bartender that he could "go ahead and board up the window and cash out and they would be on the property to have an escort out" are insufficient to establish an affirmative duty. This is especially true when all parties testified that the police immediately vacated the building to attempt to locate Rouse (*see, Yearwood v Town of Brighton,* 101 AD2d 498, 501, *affd* 64 NY2d 667). Even if

those assurances are deemed legally sufficient, they were made to the bartender and not to Thomas and Tillman. One cannot deduce from the statements by the police that they were assuming an obligation to protect all persons in the area, including Thomas and Tillman, who were not even employees of the bar *(see, Cuffy v City of New York,* 69 NY2d 255).

Also fatal to plaintiffs' case is the absence of proof that the City had knowledge that inaction on the part of the police officers would lead to harm to Thomas and Tillman *(see, Kircher v City of Jamestown, supra,* at 257). The evidence establishes that, at the time Rouse was escorted from the bar, he made a general threat ("all you mother f——s are dead"). Neither Thomas nor Tillman told the police upon their arrival that he was fearful of Rouse and each declined to press charges against him. There is no proof that Rouse had a weapon or a reputation for violence. In short, there is no proof from which the police officers could have determined that it was likely that Rouse would return some 30 to 40 minutes later and wantonly slay one customer and injure another. Thomas and Tillman, by electing to remain on the premises after it closed, as opposed to vacating it as did the other customers following the initial disturbance, demonstrated that there appeared to be little likelihood that Rouse would carry out his threat. If Thomas and Tillman did not fear Rouse and did not seek police protection, there is no basis to conclude that the police officers should have reasonably believed that the resulting injury and death were likely to occur. Absent that belief, there can be no liability *(see, Kircher v City of Jamestown, supra,* at 257; *Cuffy v City of New York, supra,* at 260).

Finally, and most significantly, there is insufficient evidence to support a finding that Thomas and Tillman justifiably relied upon the "assurances". Thomas and Tillman voluntarily remained at the bar after the bartender escorted Rouse from the bar for breaking a window. They were in the process of assisting in the cleanup when the police arrived. Their actions were no different after the police arrived. The "assurances" did not increase the risk to Thomas and Tillman that they previously had assumed by electing to remain on the premises. Absent an increase in risk, there can be no liability *(see, Bain v City of Rochester,* 115 AD2d 957, 958, *lv denied* 67 NY2d 606; *Helman v County of Warren,* 111 AD2d 560, 561, *affd* 67 NY2d 799).

I would reverse, grant defendant's motion and dismiss the complaints. (Appeal from Order of Supreme Court, Cayuga County, Contiguglia, J.—Negligence.) Present—Green, J. P., Lawton, Callahan, Balio and Boehm, JJ.