■ DONALD D'AVOLIO, as Administrator C. T. A. of the Estate of AGATHA D'AVOLIO, Deceased, Appellant, v HUBERTO W. PRADO et al., Respondents. (Appeal No. 1.) [715 NYS2d 681] —Order unanimously affirmed without costs. Same Memorandum as in *D'Avolio v Prado* ([appeal No. 2] 277 AD2d 877 [decided herewith]). (Appeal from Order of Supreme Court, Niagara County, Joslin, J.—Summary Judgment.) Present—Green, J. P., Pine, Hurlbutt, Kehoe and Lawton, JJ.

■ DONALD D'AVOLIO, as Administrator C. T. A. of the Estate of AGATHA D'AVOLIO, Deceased, Appellant, v HUBERTO W. PRADO et al., Respondents. (Appeal No. 2.) [715 NYS2d 827] —Order unanimously reversed on the law without costs, motion denied and complaint against defendant County of Niagara reinstated. Memorandum: Agatha D'Avolio (decedent) died in May 1992 as a result of injuries inflicted by her husband, Frank D'Avolio (D'Avolio). D'Avolio, who suffered from mental illness, had been receiving psychiatric care from defendants Huberto W. Prado, M.D. and Niagara Falls Memorial Medical Center (NFMMC), and D'Avolio's family had sought services for D'Avolio from the emergency mental health hotline (Hotline) run by defendant County of Niagara (County). D'Avolio's family had also sought police services from defendant City of Niagara Falls (City).

Between 1989 and 1992, members of D'Avolio's family contacted the Hotline to report violence or threats of violence by D'Avolio against decedent or himself. On several occasions Hotline personnel responded and took D'Avolio into custody at the request of decedent or one of her two sons. D'Avolio had an assigned social worker and therapist through the Hotline. After the Hotline was notified on April 7, 1992 that D'Avolio had

held a knife to decedent's throat, D'Avolio was voluntarily admitted to NFMMC. He was discharged seven days later. On April 16, 1992 D'Avolio again threatened decedent with violence. The City police were called; they calmed D'Avolio down and left the scene after D'Avolio promised to be "good." Approximately one hour later, D'Avolio attempted to attack decedent. When decedent's son, Alfred, called the Hotline, he was informed that the problem was domestic and was referred to the police. While Alfred was calling the police, D'Avolio chased decedent out of the house. Immediately after explaining to the police what was happening, Alfred ended the call and went outside to help decedent. By that time, D'Avolio had inflicted injuries upon decedent that resulted in her death. Plaintiff, the administrator of decedent's estate, commenced this action alleging, *inter alia,* that the City had failed to provide police protection and that the other defendants had failed to provide adequate mental health services.

Supreme Court properly granted the motion of the City seeking summary judgment dismissing the complaint against it. In order to impose liability on the City for failure to provide police protection, plaintiff had to establish the existence of a special relationship between the person injured and the municipality (*see, Mastroianni v County of Suffolk,* 91 NY2d 198, 203-204; *Kircher v City of Jamestown,* 74 NY2d 251, 255-256; *Cuffy v City of New York,* 69 NY2d 255, 260). Thus, plaintiff had to show that the City, through words or deeds, assumed an affirmative duty to act on decedent's behalf; that the City's agents had knowledge that inaction could lead to harm; that there was direct contact between the City's agents and decedent; and that decedent justifiably relied on the City's affirmative undertaking (*see, Mastroianni v County of Suffolk, supra,* at 204; *Kircher v City of Jamestown, supra,* at 257; *Cuffy v City of New York, supra,* at 260). The City established that there was no assumption of an affirmative duty or justifiable reliance by decedent, and plaintiff failed to raise an issue of fact. There was no contact between the City's agents and decedent herself, and decedent's son abandoned the last 911 call before any representation was made (*see, Burger v County of Onondaga,* 272 AD2d 965, *lv denied* 95 NY2d 760). Further, "the actions of the officers in concluding their investigation and leaving the scene [after the first visit] signified unmistakably that they intended to do no more" (*Yearwood v Town of Brighton,* 101 AD2d 498, 501, *affd* 64 NY2d 667). There was no evidence of a representation by the police that they would afford decedent continuous protection or that decedent relied on any assurances by the police (*see, Sostre v City of New York Hous. Auth.,* 150 AD2d 766).

The court erred, however, in granting the motion of the County seeking summary judgment dismissing the complaint against it. The County contends on appeal only that it was exercising a governmental function and thus that a special relationship was required. The County's provision of mental health services is a proprietary function (*see, Schrempf v State of New York*, 66 NY2d 289, 294; *Rattray v State of New York*, 223 AD2d 356, 357), and thus no special relationship between the County and decedent is required in order to establish liability. Even assuming, arguendo, that the cause of action against the County was based only on the events of April 14, we conclude that the essence of plaintiff's contention on appeal is that the Hotline should have arranged for D'Avolio to be removed from the premises. Such action could not be undertaken by the Hotline without an assessment of D'Avolio's mental health (*see, Schrempf v State of New York, supra*, at 293-294; *see also, Sebastian v State of New York*, 93 NY2d 790, 793-794). The County may be liable for its alleged breach of the duty to protect others by restraining mentally ill patients who are dangerous or potentially dangerous (*see, Schrempf v State of New York, supra*, at 294-295; *Williams v State of New York*, 308 NY 548, 554-555).

Finally, the court did not abuse its discretion in denying plaintiff's motion seeking to amend the complaint to add a cause of action for gross negligence and wanton conduct and a demand for punitive damages against defendants Prado and NFMMC. There is no support in the record for the assertion that the conduct of those defendants was "so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others" (*Dumesnil v Proctor & Schwartz*, 199 AD2d 869, 870; *see, Harrell v Champlain Enters.*, 222 AD2d 876; *Maher v Julien*, 168 AD2d 345, 346). Further, plaintiff offered no excuse for the delay of almost six years from the commencement of the action in seeking the amendment (*see, Walter v LeCesse Corp.*, 54 AD2d 1136; *see also, Leibowitz v Plaza 400 Owners' Corp.*, 226 AD2d 681, 682, *lv dismissed* 88 NY2d 963). (Appeal from Order of Supreme Court, Niagara County, Joslin, J.—Summary Judgment.) Present—Green, J. P., Pine, Hurlbutt, Kehoe and Lawton, JJ.