■ THOMAS WALSH, as Administrator of the Estate of JAC-QUELINE WALSH, Deceased, Respondent, v TOWN OF CHEEK-TOWAGA, Appellant. [654 NYS2d 912] —Order affirmed with costs. Memorandum: In the early morning hours of September 18, 1992, a police officer employed by defendant Town of Cheek-towaga (Town) pulled over an automobile owned by plaintiff's decedent, Jacqueline Walsh. An acquaintance of Walsh was driving and she was a passenger. As the result of the traffic stop, the acquaintance was placed under arrest for driving while intoxicated. Based upon his observations of Walsh, the officer determined that Walsh was also intoxicated and unable to drive safely, and an Alcosensor screening test administered at the scene indicated that Walsh's blood alcohol concentration was .16%. At his examination before trial, the officer testified that he offered to call a cab or give Walsh a ride to any destination she chose, but Walsh wanted to drive her car. When the officer refused to permit Walsh to drive, she left the scene on foot. As Walsh walked away, other officers arrived. Approximately 15 minutes later, Walsh was struck by a train while crossing railroad tracks that were approximately 35 feet from where her car was stopped. She died a short time later.

Plaintiff commenced this wrongful death action, alleging that Walsh's death was the result of the negligent acts and omissions of the Town's Police Department. The Town moved for summary judgment dismissing the complaint on the ground that it had no special relationship with Walsh. Supreme Court properly denied that motion. Plaintiff does not seek to impose liability on the Town for its failure to provide adequate police protection (*see, Snyder v City of Rochester*, 124 AD2d 1019; *cf., Cuffy v City of New York*, 69 NY2d 255, *mot to amend remittitur dismissed* 70 NY2d 667). Rather, plaintiff alleges that the officers were negligent in removing Walsh from her automobile and thereby leaving her stranded, in a visibly intoxicated state, on a dark road within 35 feet of railroad tracks, at 5:30 in the morning. That issue may be resolved under general negligence principles (*see, Snyder v City of Rochester, supra*). As the Court of Appeals observed in *Parvi v City of Kingston* (41 NY2d 553, 559): "The case law is clear that, even when no original duty is owed to the plaintiff to undertake affirmative action, once it is voluntarily undertaken, it must be performed with due care

(*Marks v Nambil Realty Co.*, 245 NY 256, 258; *Glanzer v Shepard*, 233 NY 236, 239; *Zelenko v Gimbel Bros.*, 158 Misc 904, affd 247 App Div 867). As Restatement of Torts 2d (§ 324) puts it, 'One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure to the actor to exercise reasonable care to secure the safety of the other while within the actors charge or (b) the actor's discontinuing his aid or protection, if by so doing, he leaves the other in a worse position than when the actor took charge of him'." Further, "this duty cannot be fulfilled by placing the helpless person in a position of peril equal to that from which he was rescued" (*Parvi v City of Kingston, supra*, at 559, citing Restatement [Second] of Torts § 324, comment *g*).

In our view, whether the officers were negligent is a question of fact for resolution by a jury (*see, Parvi v City of Kingston, supra*, at 560; *Kaplan v Dart Towing*, 159 AD2d 610, 612). Further, this Court should be "reluctant to grant summary judgment against a plaintiff in a wrongful death action since the plaintiff is not held to as high a degree of proof as where an injured plaintiff can [her]self describe the occurrence" (*Zibbon v Town of Cheektowaga*, 51 AD2d 448, 450, *appeal dismissed* 39 NY2d 1056). The circumstances leading to Walsh's death are exclusively within the knowledge of the officers and plaintiff should have the opportunity to subject their accounts to cross-examination (*see, Manna v New York City Hous. Auth.*, 215 AD2d 335). Finally, it should be noted that the Town is not entitled to rely on conversations between Walsh and the officers in support of their motion for summary judgment because those conversations are not admissible under the Dead Man's Statute (CPLR 4519; *see, Zibbon v Town of Cheektowaga, supra*, at 452, n 1).

All concur except Boehm, J., who dissents and votes to reverse in the following Memorandum.

Boehm, J. (dissenting). If we were to establish a general principle, it would be that municipalities are not liable for the failure to provide police protection (*see, Weiner v Metropolitan Transp. Auth.*, 55 NY2d 175; *Riss v City of New York*, 22 NY2d 579; *Motyka v City of Amsterdam*, 15 NY2d 134). There is a narrow exception to this rule, which exists only when there is a "special relationship" that has been assumed by the municipality or its agents (*see, Sorichetti v City of New York*, 65 NY2d 461; *Florence v Goldberg*, 44 NY2d 189; *Parvi v City of Kingston*, 41 NY2d 553; *Schuster v City of New York*, 5 NY2d

75). Absent this "special relationship", the municipality has no duty to protect someone from harm (see, *Kircher v City of Jamestown*, 74 NY2d 251, 255-256). Because no such "special relationship" was created here, I respectfully dissent.

Four elements must be present in order for there to be such a "special relationship." They are: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (*Cuffy v City of New York*, 69 NY2d 255, 260, *mot to amend remittitur dismissed* 70 NY2d 667).

At least two of the required elements for the creation of a "special relationship" are absent here. Defendant at no time, by the acts or promises of its police officer, assumed a "special duty" on behalf of nor entered into a "special relationship" with decedent. More importantly, even assuming there may have been some undertaking by the police officer, there was no reliance by decedent on the officer. The officer observed the condition of decedent. Her speech was slurred and the officer smelled alcohol on her breath. He "felt she was incapable of operating the motor vehicle and I advised her that we were going to have to tow her vehicle and I offered her a ride to the police station, or a ride to a destination of her choice, or a number of other options, such as calling her father, and anything just to transport her from the scene". The officer also offered to take decedent in another patrol car to a destination of her choice or to provide her with a telephone to call for her own assistance at the police station. Decedent, however, rejected all of the officer's offers. He then asked her if she would like him to call a cab, and decedent said "that she wanted to walk and she told me that she didn't want her father called, she didn't want a cab, and that she wanted to walk". Decedent then left the scene and started walking westbound on Broadway. The officer did not stop decedent because "I felt she was capable of walking down the street, and I felt she was incapable of operating a motor vehicle".

Shortly thereafter, decedent returned to the scene and said "she still wanted her car". The officer told her that he felt she could not operate a motor vehicle and again offered her the alternative options of a ride to the police station or to any other destination, a cab, an opportunity to make a phone call, or a call to her father. Decedent again refused the offer and

stated that she wanted to walk. She left the scene again and the officer told her to cross Broadway and walk on the sidewalk instead of the street. Thus, although the police officer offered to assume an obligation, that is to transport the decedent to a place of her choice, she rejected the offers out of hand, not once but twice. Having clearly rejected the officer's willingness to assume that obligation, decedent did not rely, justifiably or otherwise, on any affirmative undertaking on the officer's part.

"As was made clear in *Yearwood v Town of Brighton* (101 AD2d 498, *affd* 64 NY2d 667), the injured party's reliance is as critical in establishing the existence of a 'special relationship' as is the municipality's voluntary affirmative undertaking of a duty to act. That element provides the essential causative link between the 'special duty' assumed by the municipality and the alleged injury. Indeed, at the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection (*see, De Long v County of Erie*, [60 NY2d 296, 305]; *Florence v Goldberg*, [*supra*, at 197]). On the other hand, when the reliance element is either not present at all or, if present, is not causally related to the ultimate harm, this underlying concern is inapplicable, and the invocation of the 'special duty' exception is then no longer justified" (*Cuffy v City of New York, supra*, at 261).

Essential to recovery, therefore, is proof that the injured person relied on the promise undertaken or the duty assumed by a municipality. In *Cuffy,* for example, there was proof of a promise of protection made by a police officer, but reliance thereon was not shown, and the Court of Appeals held that the complaint against the municipality should have been dismissed (*see also, Kircher v City of Jamestown, supra*; *Helman v County of Warren*, 111 AD2d 560, *affd* 67 NY2d 799 *for the reasons stated below*).

The facts in this case are not at all similar to those in *Parvi v City of Kingston* (41 NY2d 553, *supra*). There the police testified at their examination before trial that they had picked up Parvi and another man because they exhibited evidence that they " 'had been drinking' " and showed " 'the effects of alcohol' " *(supra,* at 555). When the men said they had no place to go, the officers ordered them into the police car and, pursuant to a police standard operating procedure, transported the two men outside the city limits to an abandoned golf course located in an isolated area approximately 300 feet from the New

York State Thruway. The officers drove off, leaving the two men to " 'dry out' " (*supra*, at 555). En route, the men had asked to be let off at another place, but the police refused to do so. The men wandered onto the Thruway, where they were struck by an automobile. The Court of Appeals held that taking the two men into custody created a duty on the part of the police officers to exercise reasonable care to secure their safety. The Court stated, "The case law is clear that even when no original duty is owed to the plaintiff to undertake affirmative action, once it is voluntarily undertaken, it must be performed with due care" (*Parvi v City of Kingston, supra*, at 559).

Here, decedent was never taken into custody nor was she removed from a place of safety to a place of peril. If the police officers had permitted decedent to drive her automobile in her then intoxicated state, they would have been guilty of a clear dereliction of their duty and the municipality would have been liable to her for any injuries she may have sustained in an accident (*see*, Vehicle and Traffic Law § 1192; *Snyder v City of Rochester*, 124 AD2d 1019; *see also, Holson v State of Maryland*, 99 Md App 411, 637 A2d 871).

The majority's position that this case may be decided under general negligence principles is, in my view, erroneous (*see, Selletti v Port Washington Police Dist.*, 215 AD2d 642; *Merino v City of New York*, 183 AD2d 458; *Serrano v City of New York*, 150 AD2d 297). In the absence of a "special relationship" there is no duty, and absent duty, there may be no recovery under general negligence principles (*see, Palsgraf v Long Is. R. R. Co.*, 248 NY 339, *rearg denied* 249 NY 511). In *Selletti v Port Washington Police Dist.* (*supra*, at 642), for example, the plaintiff, who was "slightly inebriated", was removed by a police officer from the car she was seen operating in an unsafe manner and taken to the Port Washington Station of the Long Island Rail Road, where she telephoned a friend to arrange a ride home. Thereafter, the plaintiff voluntarily walked away from the station, and while on the street some distance from the station she was assaulted. The Second Department held that under the circumstances the police had no duty to detain her and watch over her until someone arrived to take her home. In *Merino v City of New York* (*supra*), the First Department held that an officer employed by the New York City Transit Authority owed no special duty to an intoxicated person who was seen on the subway platform and shortly thereafter was struck by a train. And in *Serrano v City of New York* (*supra*), the First Department held that a transit officer had no duty to prevent Serrano, an intoxicated passenger, from board-

ing the subway train. While on the train, Serrano fell through an open door onto the tracks. The Court held that the fact that there had been an earlier encounter on the subway platform between the transit officer and Serrano did not " 'demonstrate any factual basis for the existence of a special duty' " and the officer did not have a duty to prevent Serrano from boarding the train (*Serrano v City of New York, supra,* at 300; *see also, Ritenour v Town of Cheektowaga,* 192 AD2d 1078, *lv denied* 82 NY2d 653).

Requiring the police officer to take decedent into custody when she had committed no illegal act invites suits for false imprisonment or actions under 42 USC § 1983 for depriving intoxicated persons of their civil rights. There is also the question of how far the duty would extend. Even the Court of Appeals declined "to speculate on the duty of a police officer to arrest or not to arrest intoxicated persons. Instead, we confront directly the duty of police officers to persons under the influence of alcohol who are already in their custody" (*Parvi v City of Kingston, supra,* at 559).

Decedent was not in custody, nor were the police officers obliged to take decedent into custody under Mental Hygiene Law § 21.09. In their view she "was not incapacitated by alcohol * * * she could walk, she could function" and, although she slurred her words a little, her speech was coherent. Further, the Mental Hygiene Law empowers an officer to take an intoxicated person into custody but it does not mandate that he do so.

Supreme Court also erred in determining that summary judgment was inappropriate because the testimony of the police officers should be subjected to cross-examination. The court erroneously relied on *Carlos v Rochester Gen. Hosp.* (163 AD2d 894). The action in *Carlos* was based on Labor Law § 240 (1); thus, plaintiff was required to establish that he was injured in a fall from an elevated worksite, and there was an issue of fact whether that had occurred. We have limited the holding in *Carlos* to its facts and have not hesitated to grant summary judgment even where plaintiff's accident was unwitnessed (*see, Morris v Mark IV Constr. Co.,* 203 AD2d 922).

Although CPLR 4519 would bar the use of conversations with a decedent to support a motion for summary judgment (*see, Phillips v Kantor & Co.,* 31 NY2d 307), the Dead Man's Statute was not raised by plaintiff in Supreme Court, nor has it been briefed or argued on this appeal (*see, Aguirre v City of New York,* 214 AD2d 692, 694; *see generally,* 10 Carmody-Wait 2d, NY Prac § 70:323). (Appeal from Order of Supreme Court,

Erie County, Cosgrove, J.—Summary Judgment.) Present—Green, J. P., Pine, Doerr, Boehm and Fallon, JJ.