Gomez v NYC Health + Hosps. S./Brooklyn Health (2025 NY Slip Op 51951(U))

[*1]

Gomez v NYC Health + Hosps. S./Brooklyn Health

2025 NY Slip Op 51951(U)

Decided on December 10, 2025

Supreme Court, Kings County

Mallafre Melendez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 10, 2025
Supreme Court, Kings County

Luz Gomez AND BRIDGET GOMEZ, Individually and 
 As Co-Administrators of the Estate of Michael Palacio Rivera, Plaintiffs,

against
NYC Health + Hospitals South/Brooklyn Health f/k/a CONEY ISLAND HOSPITAL a/k/a 
 NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, THE CITY OF NEW YORK AND 
 JOHN DOE(S) 1 - 10, JANE DOE(S) 1 - 10, THE FIRST AND LAST NAMES BEING FICTITIOUS AND UNKNOWN, Defendants.

Index No. 525926/2024

Plaintiffs
Mark Salem, Esq. ([email protected])
Mark Salem Law, P.C.
1669 East 10th Street
Brooklyn, NY 11223
718-701-0120
Defendant NYC Health & Hospitals South Brooklyn Health f/k/a Coney Island Hospital a/k/a New York City Health and Hospitals Corporation
Theresa Elizabeth Scotto-Lavino, Esq. ([email protected])
Lewis Johs Avallone Aviles LLP
61 Broadway
New York, NY 10006-2701
212-233-7195
Defendant The City of New York
Michael Shender, Esq. ([email protected])
NYC Law Department
350 Jay St, Fl 8
Brooklyn, NY 11201
718-834-4664

Consuelo Mallafre Melendez, J.

Recitation, as required by CPLR §2219 [a], of the papers considered in the review:
NYSCEF #s: 48 — 52, 56, 57
Defendant The City of New York ("the City") moves for an Order, pursuant to CPLR 3211 (a) (7), to dismiss Plaintiffs' Complaint against them for failure to state a cause of action, on the basis of governmental immunity (Seq. No. 3).
Plaintiffs commenced this action on September 24, 2024, asserting claims of negligence and wrongful death against the City on behalf of Michael Palacio Rivera ("Decedent"). The claims arise from events in the early morning of September 22, 2022, when NYPD officers responded to a 911 call that Decedent was trespassing/loitering on a mattress inside an apartment building and appeared to be under the influence of drugs (heroin). The officers called for an ambulance, and Decedent was taken to a hospital by Emergency Medical Services.
After being admitted to Coney Island Hospital (non-moving co-defendant New York City Health and Hospitals Corporation), Decedent took more heroin and suffered a cardiac arrest on the morning of September 23, while inside the hospital. In their Complaint, Plaintiffs allege that the police officers failed to adequately search Decedent and confiscate the drugs he was carrying. They asserted negligence against "NYC, its agents, employees and/or contractors" including NYPD, paramedics, and ambulance EMTs. Thus, they also claim the EMTs failed to adequately search Decedent.
In a motion to dismiss pursuant to CPLR 3211 (a) (7), courts generally "afford the pleading a liberal construction, accept all facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Browne v Lyft, Inc., 219 AD3d 445, 446 [2d Dept 2023]; see also Cockburn v City of New York, 129 AD3d 895, 896 [2d Dept 2015]). "Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (Geltzer v City of New York, 237 AD3d 910, 912 [2d Dept 2025], quoting Cruz v City of New York, 211 AD3d 1011, 1011 [2d Dept 2022]).
Evidentiary submissions may also be considered on a CPLR 3211 (a) (7) motion to dismiss, but those submissions from the movant must "establish conclusively that the plaintiff has no cause of action" or disprove a material fact claimed in the Complaint (Rozell v Milby, 98 AD3d 960, 961 [2d Dept 2012]).
Here, the movant argues that Plaintiffs have no viable cause of action against the City, because a municipality acting in a governmental capacity is generally immune from liability except in narrow circumstances where a "special duty" was owed to the injured party (Ortiz v City of New York, 171 AD3d 1198, 1199 [2d Dept 2019]; see also Valdez v City of New York 18 NY3d 69, 76 [2011]).
Plaintiffs in this action concede that the City's NYPD officers were performing a governmental function when they responded to the 911 call involving Decedent on September [*2]22, 2022. "Police and fire protection are examples of long-recognized, quintessential government functions" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]). Therefore, liability for negligence can only attach if they "voluntarily assumed a special relationship with the plaintiff [or decedent] beyond the duty that is owed to the public generally" (i.d. at 430).
"Whenever an individual seeks recovery out of the public purse for acts taken in a governmental capacity, it is the plaintiff's obligation to prove that the government defendant owed a special duty of care to the injured party because duty is an essential element of the negligence claim itself" (Ferreira v City of Binghamton, 38 NY3d 298, 313 [2022] [internal citations and quotation marks omitted]). "In order to meet this burden, a complaint must allege facts and circumstances from which the existence of a special duty could reasonably be inferred" (Canberg v County of Nassau, 214 AD3d 943, 946 [2d Dept 2023]). "In situations where the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity" (Ortiz at 1200; see also Boland v City of New York, 209 AD3d 960, 961 [2d Dept 2022]).
The special duty doctrine was outlined in the seminal case of Cuffy v City of New York with four essential elements:
"(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) the party's justifiable reliance on the municipality's affirmative undertaking." (Cuffy v City of New York, 69 NY2d 255, 260 [1987]).
In their motion to dismiss, the City focuses primarily on the first and fourth elements of Cuffy: assumption of an affirmative duty and justifiable reliance.
On the first element, the City argues that the police officers did not assume "through promises or actions . . . an affirmative duty to act on behalf" of Decedent (Cuffy at 260). According to an affidavit from Officer Kelly Espinoza ("Officer Espinoza"), she and her partner responded to the 911 call and questioned Decedent in the stairwell of the building. She averred that "I asked him if he needed medical assistance and he responded in the affirmative," and she and her partner then "escorted him out of the building and called for an ambulance." Before he was taken into the ambulance, Officer Espinoza states that she asked Decedent to "empty his pockets" and he disposed of needles and other items. He was then taken by the ambulance to Coney Island Hospital; he was never placed in police custody.
The City argues that these facts do not support any inference of an affirmative duty, with respect to alleged failure to fully search Decedent for drugs. They argue that no affirmative duty was assumed by an omission, citing a Fourth Department case where the court found "the officers' refusal to remove weapons from the residence does not constitute the requisite assumption of an affirmative duty to act" (Halpin v Town of Lancaster, 24 AD3d 1176, 1177 [4th Dept 2005], affd, 7 NY3d 827 [2006]).
This Court also notes that in Halpin, the Fourth Department found that the officers "did not provide any verbal assurances to plaintiff that they would provide further assistance, nor did they otherwise act in a manner that would lead plaintiff to assume that they would provide further aid. Rather, the record unequivocally establishes that they left the scene with the unmistakable intention of taking no further action." (I.d. at 1177).
In opposition, Plaintiffs argue that the police officers assumed a duty to act based on Officer Espinoza's comment that she "asked him if he needed medical assistance and he responded in the affirmative." Plaintiffs argue that the officers effectively "took charge" of a person under the influence of drugs and assumed a voluntary, affirmative duty over someone "helpless adequately to aid or protect himself" (Walsh v Town of Cheektowaga, 237 AD2d 947, 948 [4th Dept 1997], quoting Restatement [Second] of Torts § 324). Under the commonly named "Good Samaritan Rule," courts have held that once such a duty is undertaken, "it must be performed with due care" (i.d. at 947).
Plaintiffs rely primarily on two cases which are not comparable to the facts of this case. In Parvi v City of Kingston, a Court of Appeals case from 1977 which predates the special duty doctrine of Cuffy, the court found the officers "assumed a duty" toward an intoxicated person they took into custody and then abandoned him in an unfamiliar location outside the city limits to "dry out," where he was struck by a car shortly after (Parvi v City of Kingston, 41 NY2d 553, 555 [1977]). Similarly in Walsh, the officers left a woman "stranded, in a visibly intoxicated state, on a dark road" after removing her from her car at a traffic stop (Walsh at 947).
In contrast, the City argues that the NYPD officers escorted Decedent to an ambulance, rather than leaving him in a "worse position" by discontinuing their aid (see Restatement [Second] of Torts § 324). The Second Department has held that when police arrest an intoxicated person, they have a duty to "exercise the degree of care necessary under the circumstances to assure the safety of a person in that condition," but there is no further duty to watch over someone once they are escorted from a "potentially dangerous situation" into a more secure location (Maldonado v County of Suffolk, 10 AD3d 387, 388 [2d Dept 2004]).
Notwithstanding, Plaintiffs note that after the paramedics arrived, the officers reportedly told Decedent to empty his pockets of needles for "safety reasons." He did so, while apparently retaining heroin on his person that was not taken by the officers or others. Plaintiffs argue that this demonstrates a voluntary, affirmative duty was undertaken by the police to remove his access to drugs and other dangerous items, and that doing this may have indicated to the paramedics that he did not need to be searched further. They argue that officers therefore may have assumed an affirmative duty, during their interaction with Decedent, to remove drugs and paraphernalia from him, such that they should have performed this act with due care.
Granting all favorable inferences to Plaintiffs, the Court finds that the facts alleged fit within a cognizable legal theory and support the claim that the officers assumed an affirmative duty to remove drugs from Decedent through their words and actions. Therefore, Plaintiffs meet the first element of the Cuffy doctrine.
With respect to the fourth Cuffy element, Plaintiffs must show that Decedent "justifiably relied" on that affirmative undertaking to his detriment. The justifiable reliance element is especially "critical" to the special duty doctrine, as it "provides the essential causative link between the 'special duty' assumed by the municipality and the alleged injury" (Valdez at 81).
Many notable cases addressing the justifiable reliance element of the special duty doctrine involve alleged assurances made by police to a person receiving violent threats, resulting in harm when that person relied on police protection rather than seeking safety or remaining vigilant of the threat (Cuffy at 259; Valdez at 82). As the court stated in Cuffy, the "heart" of special duty cases are situations where "a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection" (Cuffy at 261). "Essential to [*3]recovery is proof that the plaintiff relied on the promise and that his reliance was causally related to the harm he suffered" (i.d. at 258). "The element of justifiable reliance must be assessed through the prism of reasonableness" (Valdez at 84).
The court in Cuffy found that, although officers had made a promise to protect the plaintiffs from a tenant in their downstairs apartment, justifiable reliance could not be established where the injured party "periodically looked out her front window . . . and had not seen any police cars pull up in front of her house," and "by midday [the injured party] was aware that the police had not arrested" their assailant (Cuffy at 263). The Court of Appeals similarly found in Valdez that even if a police officer had expressly promised to arrest the victim's ex-boyfriend "immediately," any claim of "justifiable reliance" was undercut by the fact the victim knew more than a day had passed and he had not been arrested (Valdez, 18 NY3d 69).
Here, there are no factual allegations or inferences which can support a finding that Decedent was lulled into a false sense of security or induced to forego other avenues of protection by any alleged assurance of the officers to confiscate the drugs he was using. Indeed, even if the officers had made an implied or direct promise to protect him from self-harm, Decedent knew there were drugs on his person and that the officers had not taken them by the end of their interaction. He later overdosed after being taken to the hospital, no longer in police custody and fully aware they had not searched him or found the drugs. It cannot be reasonably inferred from these facts that he justifiably relied on the officers, and that the harm he suffered was caused by that reliance.
In opposition, Plaintiffs make the argument that Decedent was, by nature of his addiction, implicitly reliant on the officers to bodily search him and ensure there was nothing else in his pockets [FN1]
. There is simply no existing case law to support this position. Citing to Parvi and Walsh, as discussed above, Plaintiffs argue that the Decedent relied on the officers due to his "incapacity" and intoxicated status. However, a vulnerable status alone cannot substitute for justifiable reliance. The Court of Appeals has found that a plaintiff who was medically incapacitated and unable to communicate "could not either contact or rely upon" the municipal defendants due to his lack of awareness (Laratro v City of New York, 8 NY3d 79, 83-84 [2006] [emphasis added]). Plaintiffs here are in the untenable position of arguing that Decedent was so incapacitated by his illness that he relied on the officers to remove the source of his addiction, and this reliance resulted in him ultimately taking those drugs at the hospital, hours after the police encounter. These circumstances do not demonstrate a "false sense of security" which justifiably induced Decedent to forego other avenues of protection, e.g., ridding himself of the drugs or alerting medical staff after the officers were gone. As the City argues in reply, Decedent's own knowledge they had not confiscated the drugs severs any causal link between "justifiable reliance" and the harm he ultimately suffered.
Furthermore, Plaintiffs argue that the police officers' actions "did not place the decedent in any safer position than before" (emphasis added). However, courts have long held that municipalities should not be held to the standard of being "quasi-insurers" of the safety of citizens, which would leave the city "open to liability whenever it can be shown that they could [*4]have or should have done better" (Conde v City of New York, 24 AD3d 595, 598 [2d Dept 2005]; Pelaez v Seide, 2 NY3d 186, 119 [2004], abrogated in part by McLean v City of New York, 12 NY3d 194 [2009]). Doing so could "impel governments to withdraw or reduce their protective services" (McLean at 204). Thus, the applicable standard is whether the defendants "placed the decedent in a worse position than [he] would have been if they never assumed the duty to help" (Koyko v City of New York, 189 AD3d 811, 813 [2d Dept 2020] [emphasis added]; see also Halberstam v Port Auth. of New York and New Jersey, 175 AD3d 1264, 1267 [2d Dept 2019]; Holloway v City of New York, 141 AD3d 688, 690 [2d Dept 2016]; Dixon v Vil. of Spring Val., 50 AD3d 943 [2d Dept 2008]). It cannot be said that Decedent was placed in a worse position by his reliance on the NYPD officers' actions than if they had made no effort to remove him from the premises of the apartment building, escort him to an ambulance for hospital transport, and direct him to empty his pockets, albeit without conducting a full search. Plaintiffs have not met that burden, as they fail to support their position with any facts or circumstances tending to show Decedent justifiably relied on the officers' affirmative undertaking, and that reliance placed him in a worse position.
In sum, Plaintiffs cannot sustain their claim against the City without overcoming the "threshold burden" that they violated a special duty to Decedent (Valdez at 80). While Plaintiffs assert facts in support of the "affirmative undertaking" element of the special duty doctrine, they fail to establish that decedent justifiably relied on the officers for his safety and was placed in a worse position as a result. Therefore, the Court finds that Plaintiffs have not stated a claim against the City which fits within a cognizable legal theory, and the City's motion to dismiss is granted.
To the extent Plaintiffs assert any claims against the City's EMTs or paramedics, the City also moves for dismissal and argues they were performing a government function and did not assume a special duty toward Decedent. Plaintiffs do not address the part of the motion dealing with the actions of the City's EMTs or paramedics. Their opposition is limited to the alleged acts and omissions of the NYPD officers. Therefore, any claims against the City arising from the conduct of the EMTs or paramedics are dismissed without opposition.
Accordingly, it is hereby:
ORDERED that the part of the City of New York's motion for an Order, pursuant to CPLR 3211 (a) (7), dismissing all claims arising from the NYPD officers on the basis of governmental immunity, is GRANTED, and it is further
ORDERED that the part of the City of New York's motion (Seq. No. 3), for an Order, pursuant to CPLR 3211 (a) (7) dismissing any claims arising from the acts and omissions of the EMS technicians or paramedics is GRANTED without opposition; and it is further
ORDERED that Plaintiff's Complaint against the City is DISMISSED in its entirety, and it is further
ORDERED that the caption is amended to read:
SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS
LUZ GOMEZ AND BRIDGET GOMEZ, Individually and As 
Co-Administrators of the Estate of Michael Palacio Rivera,
Plaintiffs, 
against
NYC HEALTH + HOSPITALS SOUTH/BROOKLYN HEALTH f/k/a CONEY ISLAND HOSPITAL a/k/a NEW YORK CITY HEALTH AND 
HOSPITALS CORPORATION, AND JOHN DOE(S) 1 — 10, JANE DOE(S) 1 — 10, THE FIRST AND LAST NAMES BEING 
FICTITIOUS AND UNKNOWN,
Defendants.
The Clerk shall enter judgment in favor of THE CITY OF NEW YORK
This constitutes the decision and order of this Court.
ENTER.
Hon. Consuelo Mallafre Melendez
J.S.C.

Footnotes

Footnote 1:As noted by the City during oral argument, the responsibility of police officers to search a person for hidden drugs raises Constitutional and public policy issues, which are not addressed in the papers.